SARAH M. DISBROW, Respondent, *v.* GRIFFIN B. DISBROW, Individually and as a Trustee, and Others, Appellants, Impleaded with GEORGE A. DISBROW, Individually and as Trustee, and Others.

*Removal of trustees by the court — grounds thereof — insurance in excess of the value of the trust property — penalty for delay in the payment of taxes — improvements ordered by one trustee against the wish of his co-trustee — proof as to the value of repairs — proof that compensation was orally agreed upon.*

The power of the Supreme Court to remove trustees does not necessarily depend upon proof of actual mismanagement, misconduct or dishonesty on the part of the trustees, but may be exercised whenever the court can see that inharmonious relations exist between the trustees, or between them and the *cestui que trust,* and that such relations are likely to result in material injury to the trust estate.

A trustee alleged to have insured the trust property at more than its selling value, will not be charged with the excess of premiums paid by him, where it appears that he actually paid such premiums, and that the amount of insurance which he placed upon the property was the same as that which had been

kept upon it by previous owners, and there is no evidence of any substantial depreciation in its value in the meantime.

The penalty imposed and paid by the trustee, for delay in the payment of taxes levied upon the trust property, will not be charged against him individually on his accounting, where it is not shown that, at the time the taxes became due, he had sufficient money to pay them, and it does appear that the *cestui que trust* demanded the money in the trustee's hands, although the payment to her should delay the payment of the taxes.

A trustee who assumes the entire management of the trust property is entitle to be allowed the expenses actually incurred by him in putting gas pipes and fixtures into tenement houses, although the work was done against the objection of his cotrustee and the *cestui que trust*, where it appears that it was necessary to light the buildings with gas in order to secure tenants for them.

The force of testimony given by the persons who performed the work, to the effect that the charges made by them and paid by the trustee were fair and reasonable, and that the labor was actually performed and the materials actually furnished, is not overcome by proof that other persons had the same or similar work done and materials furnished at a less price.

The trustee is also entitled to be allowed for moneys paid to mechanics, painters, carpenters, etc., for work performed and materials furnished, although he fails to prove the exact details of the work performed, where vouchers are produced in support of such expenditures, and the persons who performed the work or furnished the materials testify, with a single exception, that the work had actually been performed or the materials furnished, and that they were necessary to keep the premises in tenantable condition, and were worth the amounts charged. BARRETT, J., dissented.

Where a trust deed contains no provision regulating the compensation of the trustees, evidence of an oral agreement between one of the trustees and the grantor to the effect that he was to be allowed five per cent commissions on the amount collected, is inadmissible, as it tends to alter, modify and contradict the terms of a written instrument.

APPEAL by the defendants, Griffin B. Disbrow, individually and as a trustee, and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of March, 1898, *nunc pro tunc* as of the 21st day of December, 1897, upon the decision of the court, rendered after a trial at the New York Special Term, removing the defendants Griffin B. Disbrow and George A. Disbrow, as trustees, and directing an accounting, and also from a final judgment in favor of the plaintiff entered in said clerk's office on the 6th day of December, 1898, upon the report of a referee after such accounting had been had.

*Jacob F. Miller*, for the appellants.

*James R. Fancher*, for the respondent.

McLAUGHLIN, J.:

This action was brought to remove the defendants Griffin and George Disbrow, as trustees, and for an accounting by them, and to have a trustee appointed in their place.

Prior to November 1, 1893, Benjamin D. Disbrow died, leaving him surviving this plaintiff, his widow, and four sons, the defendants Griffin B., Charles A., Robert N. and George A. Disbrow, his only heirs at law and next of kin. He left a will, in and by which he devised all of his property to his son Robert, and just prior to his death he also executed and delivered to Robert a deed conveying to him all of his real estate. The probate of the will was contested, and after a trial had probate was refused. Subsequently an action was brought to set aside the deed, and while this action was pending a compromise was effected between all of the parties interested, whereby the defendant Robert N. Disbrow and wife executed a trust deed, in and by which the defendants Griffin and George were appointed as trustees to take charge and to care for the real estate described in the deed to Robert, and to pay to the plaintiff, during her lifetime, the net income therefrom. At her death the property was to be sold, and after paying to Griffin the sum of $7,148 and to Charles the sum of $500, sums which their father was owing them, respectively, at the time of his death, the payment of which was postponed by consent until the death of the plaintiff, the balance was to be divided equally between Griffin, George, Robert and Charles.

In pursuance of this deed the defendants Griffin and George entered upon the execution of the trust committed to them. Thereafter, in the management of the property, ill-feeling sprang up between the two trustees and the defendant Griffin and the plaintiff, which finally culminated in the plaintiff bringing this action to remove both trustees and to have another trustee substituted in their place. The learned justice sitting at Special Term, after a trial had, reached the conclusion as appears from his opinion, that the trust

had been improperly administered because of the "feeling of hostility between the two trustees," and for that reason, if no other, they should be removed.

After a careful consideration of the record before us, we are entirely satisfied that the conclusion reached by the learned justice is right. The defendant Griffin, in the discharge of his duties as trustee, acted in not only an arbitrary and offensive manner with his cotrustee, but he failed to treat his mother, this plaintiff, with the respect due her, not only as his mother, but as one having the principal interest in the trust property. He took the entire management of the property into his own hands, and treated with contempt reasonable requests made by his cotrustee and the plaintiff in reference to what he was doing. His acts were such that it is not at all surprising that the plaintiff became suspicious of him, doubted his integrity, and finally asked for his removal. Neither is it at all surprising that bitter feeling was engendered between him and his cotrustee. The cotrustee, under the trust deed, had the same power and authority as to the property that he had, and he could not treat him in the manner disclosed in this record without subjecting himself to the liability of being removed for this cause alone.

There is no doubt but that the Supreme Court has the power to remove, when a sufficient cause exists, trustees from the management of trust estates, and the exercise of this power does not necessarily depend upon proof of actual mismanagement, misconduct or dishonesty of the trustees. Whenever the court can see that inharmonious or unfriendly relations exist between the trustees, or between them and the *cestui que trust,* and that by reason of such inharmonious and unfriendly relations material injury may and is likely to result to the trust estate, it will exercise the power which it has, and to prevent that injury it will remove one, or, if the interest of the estate requires it, all of the trustees. This principle is very clearly stated by Mr. Justice GRAY, in the opinion delivered by him in *May* v. *May* (167 U. S. 310). He said: "The power of a court of equity to remove a trustee and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed; and may properly be exercised whenever said state of mutual ill-feeling, growing out of his behavior, exists between the

trustees, or between the trustee in question and the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent the cotrustee or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out or are greatly exaggerated."

In *Quackenboss* v. *Southwick* (41 N. Y. 117) Judge Grover, in speaking of a trustee who had been removed, as a person unsuitable to execute the trust, said : " If this ground is sustained it must be on account of the personal relations of the two acting executors and trustees and of the relations of the appellant to those interested in the estate, and not upon the ground of any defect of capacity or integrity, as there is no charge of the latter. The case shows that there had been some differences of opinion between the trustees, relative to selling certain portions of the real estate. These differences furnish no more ground for the removal of one than of the other, and I think none for the removal of either, * * * but it does appear that the relations between the appellant and his cotrustee (Quackenboss) are such that they will not probably co-operate in closing the trust beneficially to those interested in the estate. It is not very material to inquire how such relations originated or by whose fault, unless such inquiry should of itself disclose that the conduct of one had been such as to render him disqualified to act as trustee. It is sufficient to ascertain the fact to warrant the removal of one and the appointment of another in his place, to secure the faithful performance of the trust." (See, also, *Scott* v. *Rand*, 118 Mass. 215 ; *Wilson* v. *Wilson*, 145 id. 490 ; 2 Story Eq. Juris. § 1288.)

The evidence introduced upon the trial discloses that hostility to a marked degree exists between Griffin and George, and also between Griffin and this plaintiff; and it is apparent that this feeling is such as to prevent the hearty co-operation between the two trustees, which should be present in order that they may properly manage property committed to them. To permit them to act as trustees would tend in no small degree to jeopardize the trust estate, and to defeat the object of the trust. The trial court, therefore, properly exercised the power which it had, by removing both of the trustees and appointing another in their place.

We are, however, of the opinion that the account of Griffin was erroneously surcharged with certain items: (1) Certain sums paid for insurance the referee refused to allow on the ground that the property was insured for more than its selling value; and that Griffin was personally liable, he having effected the insurance for the excessive premium paid, to the amount of fifteen dollars and fifty-seven cents. There is no question but that this amount was actually paid for insurance by Griffin, and in answer to the suggestion that the property was insured for more than its selling value, it was made to appear that the amount of insurance kept upon it by Griffin was the same as that theretofore kept upon it by Robert under the deed to him from his father, and also the same that had been previously kept upon it by his father. It did not clearly appear that there had been any substantial depreciation in the meantime in the value of the property, and we think that the premiums paid should have been allowed.

(2) The referee refused to allow Griffin the amount of eighty-seven dollars and seventy-three cents penalties incurred by him in not paying taxes upon the trust within a specified time. It does not appear whether, at the time the taxes became due, the trustee had in his hands funds sufficient to pay them or not. It, however, does appear that the reason why the taxes were not paid sooner than they were, was because the plaintiff demanded the money in the hands of Griffin for her own personal use, and informed him that she desired it, even if the payment of the taxes was delayed. Under such circumstances, she is not in a position to complain because the taxes were not paid at an earlier date. We think this item should have been allowed.

(3) A portion of the expenses incurred in putting gas pipes and fixtures into two tenement houses was also disallowed. We think this was error. The plaintiff and the trustee George, it is true, objected to Griffin's incurring the expense of putting in the gas pipes and fixtures, but it appears from Griffin's testimony, and it is not contradicted, that it was necessary to light those buildings with gas in order to secure tenants for them. He actually paid the amount claimed in his bill for the labor and materials used in making these changes. It is true these alterations may be regarded as a permanent improvement; nevertheless, they are for the benefit of

the plaintiff, if the property could not be rented without them. The referee found that the work was necessary and was beneficial to the *cestui que trust*, but he allowed only $100 upon the sum paid, on the ground that one Burne, the owner of similar houses, had put gas pipes and fixtures into his building at a cost of $50, and for that reason the referee concluded that the appellant Griffin should only be allowed $50 for each house. It is unnecessary to determine whether testimony as to what it cost Burne to put gas pipes and fixtures into his house was admissible. Even conceding that it was, it did not justify the referee in charging the trustee with the amount expended by him in excess of $100. Vouchers were produced showing an actual payment of the amount claimed. The persons performing the work were produced and testified that the charges made were fair and reasonable and that the labor was actually performed and the materials actually furnished. Proof of this character cannot be overcome and disregarded by the fact that some other person had the same or similar work done, and materials furnished, at a less price.

(4) The referee also refused to allow various sums paid to mechanics, painters, carpenters, etc., for work performed and materials furnished, amounting in all to the sum of $1,782.16. We think this was error. The trustee actually paid out this amount. Vouchers for the expenditures were produced before the referee, and every person except one who performed the work or furnished the materials, testified that the work had actually been performed or the materials furnished, and that they were necessary to keep the premises in tenantable condition, and that the same were worth the amounts charged. It seems the referee refused to allow these items, upon the ground that the trustee had failed to prove the exact details of the work performed. The witness Atwood, who had been paid $360.34, testified that he had been employed upon the premises as a painter; that the work performed by him was necessary because of the poor condition of the buildings and the injury done to them by the tenants, and that the price charged was fair and reasonable. Freedman, who had been paid $355.19, and Friedlander, who had been paid $358, also painters, testified, in substance, that the work was necessary because of the poor condition of the building. Heyman,

a locksmith and bellhanger, whose voucher showed a payment to him of $100.70, testified that the work was for necessary repairs, and that the prices charged were fair and reasonable. Corsen, who received $485.80 for carpenter work, testified that the work which he performed was necessary and the price charged was reasonable. Davis, who received $78.70, testified that the work performed by him was necessary and that the price charged was reasonable. The payments made to these different persons made up the entire amount claimed, except $23.43 paid to Dewis. Dewis was not called as a witness, but the trustee testified, and his testimony upon this subject is not contradicted, that the amount paid to Dewis was for work actually performed by him, and which was necessary in order to preserve the property, and that he believed the prices charged were fair and reasonable. A voucher was produced showing payment. As to this item it should have been allowed.

(5) The referee also refused to allow the amount paid to Thomas McCall, of $1,032.08, for plumbing, except to the extent of $95.08. We think this was error. The trustee had paid to McCall the full amount claimed. He presented a voucher showing the payment, and McCall, the person to whom the money was paid, was produced, and he swore that he had actually received that amount of money for work performed upon the trust property, and it was reasonably worth the amount which he had charged; that the work which he did was absolutely necessary to keep the premises in repair for the tenants; that a large amount of the work which he did was rendered necessary by reason of the exposed position of the plumbing in the buildings.

(6) As to the item of $566, the amount claimed for commissions, we think the referee properly disallowed the same. There is no provision in the trust deed regulating or describing the compensation of the trustees, and, therefore, they were, if entitled to anything, only entitled to the fees allowed by law to executors or administrators. (*Meachan* v. *Stearns*, 9 Paige, 398; *In re Schill*, 53 N. Y. 265.)

The trustee attempted to prove, in order to justify this charge, an agreement between himself and the grantor, to the effect that he was to be allowed five per cent commissions on the amount collected. The agreement which he sought to establish was an oral one, and the testimony was, therefore, properly excluded on the ground

that it tended to alter, modify and contradict the terms of a written instrument.

The interlocutory judgment should be affirmed, and the final judgment modified, as indicated in this opinion, and as thus modified, affirmed.

VAN BRUNT, P. J., RUMSEY and INGRAHAM, JJ., concurred; BARRETT, J., dissented.

BARRETT, J. (dissenting):

I cannot concur in the modification of the judgment by allowing the trustee the sum of $1,782.16, which was disallowed by the referee and the court below. This item distinctly covered betterments, as distinguished from repairs; and even if it could be treated as covering repairs, it was properly disallowed under well-settled principles. There was not a particle of evidence tending to show the actual necessity of the work for which this sum was charged. It is true that the people who did the work and got paid for it very naturally expressed the opinion that it was necessary, and that their charges were reasonable. But that will not do. The trustee was bound to show the facts upon which these opinions were based. The burden was upon him of showing the necessity for the work and of justifying the expenditure. Not a detail was given, not a fact or circumstance proved, to warrant his action on this head. He relied entirely upon the testimony of the very workmen and mechanics whom he employed. The real condition of the premises was not shown, nor were any facts and circumstances disclosed with regard to the relation of their condition to the occupancy and current income derivable therefrom. The item was plainly made up either of betterments or extravagant repairs. At all events, there were no facts shown from which the just distinction between betterments and really necessary repairs could be drawn.

With some hesitation, I concur in the allowance of what was expended for putting in gas and for plumbing, although the items on this head are certainly large.

As to the trustee's commissions, I agree that he was not entitled to compensation apart from the statute. And he certainly was not entitled to compensation under the statute. In view of his miscon-

duct throughout, the court could not properly have allowed his statutory commissions.

While, therefore, concurring unhesitatingly in the affirmance of the interlocutory judgment removing this trustee, and also in the treatment of several of the items allowed and disallowed by the learned referee, I am compelled to dissent from the modification of the final judgment in the single particular discussed.

Interlocutory judgment affirmed and final judgment modified as directed in opinion, and as modified affirmed, without costs.