(84 Misc. Rep. 582)

McKENNA et al. v. O'CONNELL et al.

(Supreme Court, Special Term, New York County.   March, 1914.)

1. TRUSTS (§ 166*)—PROCEEDINGS TO REMOVE TRUSTEE—DECISION.
    Where it appears, in an action by two beneficiaries, individually and as substituted trustees, to remove a third substituted trustee appointed with them under a declaration of trust, and to appoint a trustee suggested by them, with the avowed purpose of changing the management of a manufacturing corporation in which the trust estate is invested, regardless of any question of the sufficiency of the present management of the corporation, that the value of the trust estate is largely dependent upon the trustees' continuing to control a majority of the stock of such manufacturing corporation, and that the action sought would probably result in an impairment of the corporation's credit and affairs, while to continue the existing condition wherein the defendant trustee practically controls the corporation's affairs to the exclusion of the plaintiff trustees would be violative of the intent of the trust instrument, all three trustees will be removed and a disinterested person appointed in their stead with power to vote the stock for a change in the management of the corporation or for a continuance of the present management as he may deem desirable, or, should occasion arise, to dispose of the stock.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 217, 218; Dec. Dig. § 166.*]

2. TRUSTS (§ 165*)—REMOVAL OF TRUSTEE—POWER OF COURT.
    A court of equity may remove trustees and appoint others in their stead, when required for the preservation of the trust estate.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 216; Dec. Dig. § 165.*]

Action by Julia T. Harlin McKenna and another, individually and as substituted trustees under declarations of trust of Julia T. Harlin and others against Marcella A. O'Connell, individually and as substituted trustee under declarations of trust of Julia T. Harlin and others.   Ordered according to opinion.

Rounds, Hatch, Dillingham & Debevoise, of New York City (Ralph S. Rounds, of New York City, of counsel), for plaintiffs.

Rushmore, Bisbee & Stern, of New York City (Charles E. Rushmore, of New York City, of counsel), for defendant O'Connell.

Kellogg & Rose, of New York City, for defendant McNab & Harlin Mfg. Co.

L. Laflin Kellogg, of New York City, guardian ad litem, for infant defendants O'Connell.

John Z. Lowe, of New York City, guardian ad litem, for infant defendants McKenna and another.

GUY, J.  [1] This action is brought individually by two plaintiffs beneficiaries and individually and as trustees by the two other plaintiffs, who are also beneficiaries, to remove a third substituted trustee

alleged to have been appointed with the two plaintiff trustees as substituted trustees under a declaration of trust. Plaintiffs demand the removal of the defendant O'Connell as such substituted trustee on the following grounds: First. That, by reason of her refusal to perform her duties as trustee and to join with her cotrustees in properly voting the trust stock held by the substituted trustees, said stock, in which the moneys of the trust estate are invested, constituting a majority of the stock of said corporation, cannot be voted, and is and since 1905 has been disfranchised, the power of said substituted trustees to control or influence the management of the corporation has been nullified, and the trust thereby rendered incapable of execution or performance. Second. That defendant trustee is, and for many years has been, under the influence and domination of her husband, who is president of said corporation, and who is largely dependent upon his salary as such president and interested in retaining such position, and though defendant trustee's duty is to act independently of her husband's interests and wishes, and solely for the best interest of the trust estate, even if her husband's removal should become necessary, she nevertheless acts according to his requests and suggestions. Third. That the disagreements between the substituted trustees regarding the management of the corporation have continued so long and have generated so much resentment that "the personal relations between the three substituted trustees have, as a result of such disagreements, become so strained as to be impossible, and that harmony and co-operation between said cotrustees is no longer possible." The answer in substance denies all of the allegations of misconduct on the part of the defendant trustee and on the part of the present management of the manufacturing corporation, and as a separate defense alleges misconduct on the part of the plaintiff trustees in having failed and refused to act in harmony with the defendant O'Connell as the best interests of the trust estate require, and asks for their removal. Both complaint and answer also ask that the accounts of the three substituted trustees be stated and taken. The corporation in the stock of which the trust estate is invested is engaged in the manufacture of plumbers' and gas fitters' supplies, and the husband of the defendant trustee has since 1906 been an officer of said corporation, and for some six years last past its president and in practical control of its affairs. No evidence was offered by plaintiffs establishing any act of misconduct on the part of the defendant trustee, and plaintiffs' counsel repeatedly stated during the course of the trial that the main ground upon which defendant's removal was asked was a state of mind incompatible with the performance of her duty as trustee and an interest in her husband's welfare which has led to her refusal to co-operate with the plaintiffs for the best interest of the trust estate. A great deal of evidence has been introduced as to the conduct of the affairs of the corporation under its present management, as contrasted with its previous management under John Harlin, the founder of the business and donor of the trust estate and father of all the adult parties to this action.

While it is unnecessary, in determining this controversy, to pass definitively or conclusively upon the conduct of the affairs of the corpo-

ration under its present management, and this court in its decision does not so intend, the court finds, as matter of fact, that the plaintiffs have failed to prove any specific act or acts of misconduct, wastefulness, or extravagance in the conduct of the affairs of the corporation, or that its present management is prejudicial to the trust estate. The evidence discloses, on the other hand, that, under the previous management, the business of the corporation, though profitable, was conducted in an unscientific manner, with plant that had greatly depreciated in value, without any correct system of accounts, and was largely dependent upon the high reputation, energy, and industry of a single individual, while under its present management its plant has been practically renewed throughout, its business thoroughly organized, dividends paid, with the exception of a single year, during the entire period, including several years of great business depression, and about $400,000 worth of new machinery and plant purchased out of earnings, in addition to a like amount purchased upon credit or with moneys borrowed for that purpose, and that as it stands to-day the plant is up to date, efficient, and well equipped to do a greatly increased business, such as may reasonably be anticipated should there be a general business revival in the near future. The evidence also further discloses that under the present management the company has enjoyed and still enjoys very high financial credit, and that the manner of conducting its affairs has met with the general approval and support of the minority stockholders, who represent nearly one-half of the capital stock of the company. It also appears that it was at the request of the plaintiff trustees and the donor of the trust estate that defendant's husband became an official of the corporation in question; that he was elected director of the corporation by their votes in 1905; and that plaintiff trustees cast a ballot in his favor as late as 1907.

In view of the failure of proof of misconduct on the part of defendant trustee, it would be the duty of this court to dismiss the complaint herein but for the fact that the evidence discloses conditions perilous to the trust estate which a court of equity should remedy. The evidence shows that the beneficiaries and trustees are divided into two hostile factions; each faction influenced by and apparently under the control of the husband of one of the adult beneficiary trustees. The state of mind existing between these two leaders of hostile interests is one of extreme animosity, distrust, and personal dislike, and it is evident that any appointment made at the suggestion of one of these interests will meet with the bitterest opposition at the hands of the other. The two plaintiff trustees stated unequivocally upon the witness stand that they desired and would insist upon a change of management of the manufacturing corporation, whether the evidence showed such management to be capable and efficient or not. The defendant trustee, on the other hand, has entire confidence in the business ability and integrity of her husband and believes his continuance in the management of the corporation to be for the best interest of the trust estate, in which she and her children are interested. This state of personal hostility between the husbands of two of the trustees and the influence exercised by them has prevented a harmonious conduct of the trust for several years, amounting to a practical suspension thereof,

and if continued will seriously jeopardize the trust estate. The defendant trustee has five living children, who, under the provisions of the declaration of trust, may be ultimately entitled to one-half or more of the trust estate; the plaintiffs represent at present a majority in interest. The value of the trust estate is largely dependent upon the trustees continuing to control a majority of the stock of the manufacturing corporation. Under the terms of the declaration of trust, the death of any one of the adult beneficiaries might result in a distribution of stock which would deprive the trustees of such controlling interest. Should such a situation be imminent, the protection of the trust may require prompt action such as would not be possible should the present substituted trustees or any of them be continued in charge of the trust estate.

[2] Under these circumstances, it is manifestly the duty of a court of equity to protect the trust estate and see that the main purpose for which it was created is carried out.

"The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed, and may properly be exercised whenever such a state of mutual ill feeling, growing out of his behavior, exists between" him and his cotrustee or "the beneficiaries that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent" them "from working in harmony with him, and although charges of misconduct against him are either not made out or are greatly exaggerated." May v. May, 167 U. S. 310, 17 Sup. Ct. 824, 42 L. Ed. 179.

Like power exists to remove all trustees and appoint others in their stead where the preservation of the trust estate requires such action. Disbrow v. Disbrow, 46 App. Div. 111, 114, 115, 61 N. Y. Supp. 614.

The trust instrument provides:

"Upon the death, resignation or incapacity of myself to act as such trustee, another trustee or trustees shall be appointed in my place with the written consent of a majority of his (John Harlin's) daughters then living, or of their attorney in fact appointed for that purpose."

Though plaintiffs have come into court alleging the due appointment of the present trustees, and by a written instrument have ratified and confirmed such appointment, and though all the adult parties in interest have acquiesced in such appointment, with full knowledge thereof, since 1906, and the children of the defendant trustee, who were the only infant beneficiaries in existence at the time of the alleged appointment, do not now question its regularity, it is contended by the special guardian for the infants Elizabeth McKenna and Raymond G. Loder, born after such alleged appointment of substituted trustees, that the appointment is invalid for the reason that the declaration of trust vested no power of appointment, but simply a right of nomination in a majority of the daughters of the donor of the trust, John Harlin, living at the time of the resignation of Julia T. Harlin McKenna; that therefore the trusteeship must be deemed to be now vacant; and that the court can only fill such vacancy upon the nomination of a majority of the daughters of John Harlin now living. The plaintiffs now join the special guardian in making this contention.

The defendant trustee, on the other hand, contends that the intent of the declaration of trust was that the appointment should be made by a majority of the living daughters of John Harlin; that the words "with the consent" are, under the authorities, synonymous with the words "by the consent." In support of this construction of the trust agreement it is urged that, if the instrument is itself ambiguous on this point, the interpretation put upon the instrument by the original trustee and all the adult parties in interest and acquiesced in by the donor, who created the trust, shortly after the making of the trust instrument, should be controlling. In construing this provision it must be borne in mind that the power of appointment or of nomination is not a general power to fill vacancies, but is limited in terms to the filling of a vacancy upon the happening of a particular event, namely, the resignation, death, or incapacity of the original trustee. If regarded as a mere right of nomination, the trust instrument contemplated that such right should be exercised within a reasonable time of the happening of the event. The resignation of the original trustee occurred on the 21st day of May, 1903. The present acting substituted trustees took charge of the estate immediately thereafter. More than ten years have elapsed since the happening of that event. All the then living children of the donor joined in the written instrument appointing the present substituted trustees, which instrument, if ineffectual as an appointment, certainly was effective as a consent. If the appointment of these trustees is to be deemed invalid, then the complaint, which is predicated entirely upon the theory of the validity of their appointment, and which asks for the removal of one trustee and the retention of the other two, would have to be dismissed, the new certificates of stock issued separately to certain of the trust beneficiaries for the benefit of other beneficiaries would be rendered invalid, and the entire conduct of the manufacturing corporation, based upon the voting of such stock, brought into question.

Under these circumstances, it would seem clearly to be the duty of this court to disregard any irregularity in the mode of their appointment and consider them, for the purpose of determining this controversy, as substituted trustees now in charge of the trust estate "with the consent" of a majority of the daughters of John Harlin who were living at the time the vacancy occurred. It is a familiar rule that equity will deem to be done what should have been done. Upon the written consent of all the daughters of John Harlin then living, it would have been unquestionably the duty of the court, if the view is taken that they possessed merely a right of nomination, to appoint the three trustees to whose appointment they then consented. They not only consented thereto, but subsequently ratified and confirmed the appointment and treated it as regular in all respects, and should not now be allowed to question it; and, to protect the interests of the infants herein, it is the duty of the court to recognize it as a valid appointment.

"A court of equity, in dealing with trusts, has a right to break in upon and thwart the expressed will of the creator of the trust in some cases. * * * The benefits intended for the beneficiaries are the main subjects of considera-

tion. The modes in which those benefits may be attained are incidental, and necessity may require a change of mode to produce the intended effect. The power of the court may well be exercised in a case of evident necessity." Pennington v. Metropolitan Museum of Art, 65 N. J. Eq. 22, 23, 55 Atl. 472.

This view of the duty of the court is well supported by the very learned and exhaustive opinion in Attorney-General v. Cuming, 21 Eng. Ch. 139. In that case the question involved was the validity of the appointment of substituted trustees appointed on the nomination of two surviving trustees, whereas the deed of trust directed that the appointing of new trustees should be made whenever the number was reduced by death or resignation to five, or within three months after the number had been reduced to four. The number of trustees in that case had been reduced to four in 1810, and new trustees should have been then appointed; but no new appointment took place until 1822, when the number had been reduced to two. In upholding the appointment of trustees thus irregularly made, the court said:

"This mode of appointment, therefore, was not such as the deed required or directed. * * * It does not appear, however, that there was any fraud or concealment. * * * The appointment relates to a subject which was of general interest in the parish. * * * I cannot therefore assume, upon the pleadings and evidence as they are before me, that the appointment of 1822 was unknown to those among whom it was made and who were interested in the knowledge. * * * It appears to me that, in such a state of things, even assuming the appointment to have been originally irregular, * * * this court, if complaint had been made on the subject at the time, * * * would have declined to interfere for the purpose of removing the actual trustees. When to that consideration I add that throughout the transaction in question the validity of the appointment of 1822 has never been questioned, but that the existing body of trustees, consisting partly of the survivors of those who were appointed in 1822 and partly of those who were appointed by them, have been, during the whole of the matters that are before me, accepted and recognized in this character, * * * I am of opinion that for all the purposes of the present suit I must take the appointment of 1822 to have been valid and sufficient."

In Matter of Tempest, 1 Ch. App. 485, in passing upon the power of the court to appoint trustees where the right of such appointment had been vested by the will of the testator in two of the beneficiaries who were unable to agree, and where, at the request of one of two beneficiaries, the court below had appointed a trustee, the Appellate Court, in an opinion written by Sir G. J. Turner, L. J., said:

"First, the court will have regard to the wishes of the persons by whom the trust has been created, if expressed in the instrument creating the trust, or clearly to be collected from it. * * * The court would not appoint a person to be trustee with a view to the interest of some of the persons interested under the trust, in opposition either to the wishes of the testator or to the interests of others of the cestui que trust. * * * It is of the essence of the duty of every trustee to hold an even hand between the parties interested under the trust. Every trustee is in duty bound to look to the interests of all, and not of any particular member or class of members of his cestui que trust. A third rule which, I think, may be safely laid down is that the court, in appointing a trustee, will have regard to the question whether his appointment will promote or impede the execution of the trust, for the very purpose of the appointment is that the trust may be better carried into execution."

To appoint a trustee suggested by the plaintiffs, with the avowed object of changing the management of the manufacturing company, regardless of whether the present management has been efficient or not, might and probably would result in an immediate impairment of the credit of the company and a condition of utter chaos in its affairs. To continue, on the other hand, a condition where one of the trustees practically controls and manages its affairs, to the entire exclusion of the other trustees who are beneficiaries of the estate, would be violative of the clear·intent of the trust instrument. It is, in· the judgment of this court absolutely essential to the preservation and proper administration of the trust estate and the protection of the interests of the infant beneficiaries that the present substituted trustees should all be removed and an entirely disinterested person, representing neither of the antagonistic interests as opposed to the other, be appointed in their stead, who shall have power, if the preservation of the trust estate so requires, to inaugurate at an early date a change of management in the company's affairs, or who, on the other hand, shall, if he finds the continuance of the present management of the company to be for the best interest of the trust estate, vote the stock of the trust estate in favor of a continuance of the present management, or, should occasion for·such action arise, dispose of the stock holdings of the trust estate. In order, however, so far as is compatible with the preservation of the trust estate under existing conditions, the wishes of the donor·may receive due consideration, this court will, before appointing substituted trustees in the place and stead of the present substituted trustees, who will be removed, submit to counsel for the respective beneficiaries such names as the court has under consideration for appointment, in order that, if any reasonable objections exist to either or all of said persons, the objections may be submitted in writing for the consideration of the court; such ·objections to be submitted within five days from the date of the filing of this opinion.

Ordered accordingly.