In the Matter of the Application of JOSEPH NEMEROV for an Order Permitting Him to Bring Actions in Respect of Collateral Held by the Superintendent of Insurance as Rehabilitator of NEW YORK TITLE AND MORTGAGE COMPANY.

In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the NEW YORK TITLE AND MORTGAGE COMPANY.

In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the LAWYERS TITLE AND GUARANTY COMPANY.

In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the LAWYERS MORTGAGE COMPANY.

Supreme Court, New York County, December 18, 1933.

*Joseph Nemerov* [*Max D. Steuer, Joseph Nemerov* and *Maurice J. Dix* of counsel], for the motion.

*Cabell, Ignatius & Lown* [*Hartwell Cabell, M. H. Blinken, Morris L. Ernst* and *Newman Levy* of counsel], for George S. Van Schaick, Superintendent of Insurance of the State of New York, as rehabilitator of Lawyers Mortgage Company; *Greenbaum, Wolff & Ernst* [*Hartwell Cabell, M. H. Blinken, Morris L. Ernst* and *Newman Levy* of counsel], for George S. Van Schaick, Superintendent of Insurance of the State of New York, as rehabilitator of Lawyers Title and Guaranty Company and New York Title and Mortgage Company, opposed.

FRANKENTHALER, J. This is an application by one Joseph Nemerov, an attorney, for permission " to bring such actions at law or suits in equity as he may see fit in such courts of competent jurisdiction as he may select on behalf of the holders of guarantees and/or certificates issued and created by the New York Title and Mortgage Company to appoint a successor trustee of the underlying collateral against which said certificates are outstanding, in place of the New York Title and Mortgage Company, for the benefit of the certificate holders." Similar applications are made by

Nemerov with respect to the Lawyers Title and Guaranty Company and Lawyers Mortgage Company.

Each of these three motions is based upon an affidavit by Nemerov. The contents of each affidavit are exactly the same, triplicate originals being used — one for each motion. The affidavit states that Nemerov " is the attorney for a large number of certificate holders who own in the aggregate many millions of dollars of guaranteed mortgage certificates of these companies." It goes on to allege that the payment of such certificates is secured by bonds, mortgages and other collateral owned by the certificate holders and forming no part of the individual assets of the three companies; that the agency powers conferred upon the companies by the terms of their guaranties were conditioned upon their continued performance of such guaranties; and that George S. Van Schaick, the Superintendent of Insurance, despite the termination of these agency powers as the result of defaults upon the guaranties, continues to exercise dominion and control over said collateral. On the theory that " the Superintendent of Insurance has no legal right to deprive the certificate holders of their property," Nemerov asks that he be permitted to bring such actions or proceedings as he may deem advisable " for the appointment of suitable trustees over such property of the certificate holders in the place of each company, and to restrain said Van Schaick from interfering with such property of the certificate holders in any way, shape or manner." The reason assigned for seeking this court's permission is that the orders of the court which directed the Superintendent of Insurance to take charge of the companies for the purpose of rehabilitation restrain " the holders of such guaranteed certificates from bringing or prosecuting any actions at law, suits in equity, special or other proceedings against any of the companies or against the Superintendent of Insurance of New York, or in any way interfering with the Superintendent of Insurance of the State of New York in his conduct of any of said companies." The claim is made that these injunctive provisions are illegal and void (a) because the orders were obtained without notice to the certificate holders and other creditors of the companies, and (b) because they deprive such certificate holders and other creditors of collateral security which belongs to them, and not to the companies.

The contention that the restraining provisions above referred to are invalid for lack of notice to the certificate holders is without merit. Subdivision 2 of section 410 of the Insurance Law expressly provides that the court " may at any time during a proceeding under this article [the article includes rehabilitation proceedings] issue such * * * injunctions or orders as may be deemed necessary

to prevent interference with the superintendent or the proceeding, or waste of the assets of the insurer, or the prosecution of any actions, or the obtaining of preferences, judgments, attachments or other liens, or the making of any levy against the corporation or against its assets or any part thereof." Section 409 of the Insurance Law provides that notice of an application " in any proceeding under this article shall be served upon the insurer," or if such service cannot be made, " in such manner as the court or justice * * * shall direct." The injunctive orders here involved were obtained upon proper notice to the respective companies and in full compliance with these statutory provisions. The statute contains no requirement that notice be given to all certificate holders and other creditors. Such a requirement would prove impracticable in view of the large number of certificate holders and other creditors and their wide distribution.

The claim that the Superintendent in taking over the companies for the purposes of rehabilitation had no right or authority to take possession of the collateral which secures certificates issued by the companies is likewise without foundation. In each case which has come to the court's attention the guaranty has contained a provision conferring upon the guarantor an exclusive agency to deal with and foreclose the collateral securing the guaranteed indebtedness as well as provisions granting other rights to the guarantor. The agency thus bestowed upon the guaranty companies constitutes a valuable asset of the companies. It is an agency coupled with an interest. In each case which has come before the court the exclusive right of the guarantor to administer and foreclose the collateral was expressly made a " condition " of the guaranty and was obviously intended as a protection to the guarantor. In *Matter of Central Hanover Bank* (149 Misc. 488) this court has held that a provision making the exclusive agency irrevocable was intended to apply only as long as the guarantor continued to perform its guaranty. It may be that in some instances the guaranties are so worded that the agency of the guaranty is not subject to revocation even where there is a default in meeting the guaranty. However, whether revocable or irrevocable, the exclusive agency, *until properly revoked,* is a valuable property right of the guarantor and as such it forms part of the assets to be taken over by the Superintendent of Insurance as rehabilitator of the guarantor. The agency does not, in the event of a default upon the guaranty, terminate automatically as by conditional limitation. The effect of the default is merely to render revocable that which was previously irrevocable. The owner or owners of the collateral

may be willing, in many instances, to permit the guaranty companies to retain the agency and to continue to " service " the collateral. In the absence of an affirmative election to terminate the agency because of the guarantor's default, the agency continues to remain an asset of the guarantor. It is the statutory duty of the Superintendent to assume control over all the property and functions of guaranty companies of which he is appointed rehabilitator. Subdivision 1 of section 402 of the Insurance Law provides that " an order to rehabilitate a domestic insurer shall direct the superintendent * * * forthwith to take possession of the property of such insurer and to conduct the business thereof." Section 3 of chapter 745 of the Laws of 1933 authorizes the Superintendent in the event that a " guaranty company has been taken over by the superintendent for rehabilitation " to " take over, administer, exercise, conduct, execute and manage, * * * all of the functions of any guaranty corporation with respect to any mortgage investment sold or guaranteed by such guaranty corporation, whenever in his opinion such action is necessary or advisable for the protection of such guaranty corporation or of the holders of such mortgage investment." Section 2 of the same chapter states that " the words ' functions of any guaranty corporation ' shall include any or all of the duties, rights, functions, remedies and powers conferred with respect to any mortgage investments upon any guaranty corporation, directly or indirectly, by virtue of any statute, agreement or otherwise." Section 4 of chapter 745 specifically authorizes the Superintendent, " with respect to any bonds, mortgages or other security held by such guaranty corporation or otherwise, against which any mortgage investments have been issued," to receive, collect and sue for the interest and principal of such bonds, mortgages or other security or to bring an action to foreclose the same and take title to the property at the foreclosure sale in such name or names as he may determine. Subdivision 2-c of section 400 of the Insurance Law defines the word " assets," as used in article XI, as including " all deposits and funds of a special or trust nature." It seems clear from these statutory provisions that the Superintendent is expressly authorized to take over the agency held by the guaranty companies and to continue to exercise all rights flowing therefrom. The court, accordingly, finds itself unable to agree with the argument that the injunction is invalid as to the certificate holders because it restrains them from interfering with the Superintendent's possession of collateral which is claimed to belong exclusively to them and not to the Superintendent. The petitioner's contention is predicated upon the fallacy that the guarantor's agency in respect to the

collateral expires *automatically* the very instant the guarantor is guilty of a breach of its guaranty.

It does not follow, however, that the Superintendent of Insurance may continue to hold and exercise the agency indefinitely while those holding guaranties look helplessly on. This court has already permitted the owner of an entire mortgage to revoke the agency and to withdraw from the guaranty company the bond and mortgage as well as the right to enforce it. (*Matter of Central Hanover Bank, supra.*) The court has also indicated that certificate holders, owning undivided interests in a bond and mortgage, may take appropriate steps to obtain the same relief. (*Kline v. 275 Madison Ave. Corp.*, 149 Misc. 747.) All the certificate holders of a given issue, acting together, may revoke the agency and take the bond and mortgage, together with the right to administer and enforce the same, from the possession and control of the Superintendent for the purpose of foreclosure or otherwise. They may likewise, by unanimous consent, appoint a trustee to hold and enforce the bond and mortgage. They may also, acting in unison, substitute a new agent, either an institution or an individual, in the place and stead of the title company or other entity named as agent for the certificate holders in the certificates themselves (at least in the absence of an express agreement to the contrary). They may organize themselves into a corporate entity for the purpose of facilitating the expression and the carrying out of their collective wishes and at the same time retaining a voice in the management of the corporation through voting rights proportional to their respective interests in the guaranteed indebtedness. In this way the certificate holders may act effectively and expeditiously in respect to the problems confronting them. What all of the certificate holders, acting together, may do, may also be accomplished where it is impossible to obtain unanimity of thought and action. As pointed out in *Kline v. 275 Madison Ave. Corp. (supra)*, an appropriate action or proceeding may be commenced by one or more certificate holders in which the remaining certificate holders are given an opportunity to present their views. If some resist or oppose, the court may nevertheless grant the relief sought if convinced that the equities of the particular case require it. In determining what action to take the court will undoubtedly give due consideration to the question of the good faith or bad faith of the certificate holders expressing their views, as well as to the number of certificate holders for or against the relief asked and the aggregate amount of their certificates. Another course open to certificate holders is the adoption of a plan of reorganization approved by holders of certificates representing two-thirds in

principal amount of the mortgage indebtedness and also approved by the court (Laws of 1933, chap. 745).

The fact that comparatively few certificate holders have hitherto attempted to take steps looking toward the withdrawal of their collateral from the guaranty companies or the Superintendent of Insurance is probably attributable in large part to the practical difficulty experienced by them in obtaining the names and addresses of other certificate holders. The result has been that one or more certificate holders wishing to obtain relief have found it impossible to take action because they were ignorant of the identity of the other certificate holders of the same issue. There appears to be no valid reason, however, for permitting this dilemma to exist to the detriment of the thousands of certificate holders who find themselves, as a consequence, unable to help themselves. Section 437 of the Insurance Law provides that " lists of holders of such mortgages or certificates shall be furnished by such corporations or companies [referring to title and mortgage guaranty corporations and investment companies] to any other applicant therefor on condition, however, that such application shall be approved by the superintendent of insurance or the superintendent of banks as the case may be, who shall have the power to make such rules and regulations as to such applications as he shall deem advisable for the protection of the holders of such mortgages or certificates." It should be noted that the Superintendent's power to make rules and regulations in respect to the granting of approval is to be exercised " *for the protection of the holders of such mortgages or certificates.*" In the event that the Superintendent shall refuse to approve an application by a certificate holder for the disclosure of a list of his fellow certificate holders, the court will entertain an application by such certificate holder for an order requiring the companies or the Superintendent to disclose to the applicant the names and addresses of the other certificate holders of the same issue. The court is under a duty in the distressing conditions which now exist to provide a means whereby certificate holders shall be afforded an opportunity of taking over and managing the properties or other collateral against which their certificates are issued. The provisions of section 437, in so far as they require the approval of the Superintendent of Insurance, do not appear to have been intended to curtail or limit the power of a court of equity to permit the disclosure, upon a proper application of a certificate holder, of the names and addresses of his associate certificate holders. The purpose of the statute was apparently to broaden and enlarge the remedies of a certificate holder in respect to obtaining such disclosure by permitting him to secure a list

of certificate holders without application to the court and perhaps in cases where the court might not feel inclined to grant the application. If it be assumed, however, that the object of the statute was to confine a certificate holder to the remedy therein provided for and to make that remedy exclusive, it is sufficient to state that, in the court's opinion, the Legislature was without authority to thus abridge and curtail the inherent equity power of the Supreme Court. Applications to the court for the disclosure of the names and addresses of certificate holders will be granted whenever it appears that they are made for the purpose of enabling the applicant to bring the other certificate holders before the court or to obtain united action in respect to any matter affecting the interests of the certificate holders. Only where it is apparent that the application is made in bad faith and for improper purposes will the application be denied.

It is, of course, impossible, especially upon a motion of this character, to make a comprehensive statement of all the various remedies available to certificate holders. The language of the guaranties issued by each company differs from that of the guaranties issued by each of the other companies. It is quite possible that not all the guaranties issued by the same company are identically worded. The certificates representing undivided interests in the guaranteed indebtedness and in the guaranty itself also differ from each other, depending upon the company. Moreover, some of the certificates represent interests in a single bond and mortgage, while others represent interests in a group of bonds and mortgages. In at least some instances of the latter character the guaranty companies are given the right to substitute other bonds and mortgages for those originally deposited. It must be evident from the foregoing that it is difficult to generalize with respect to the rights of certificate holders and that much necessarily depends upon the facts of each particular case. Enough has, however, been said to indicate that in many, if not in most, instances the holders of certificates who have not been paid in accordance with the guaranty may (1) by one method or another withdraw from the possession or control of the Superintendent of Insurance the collateral held by the latter which belongs to the certificate holders, and (2) deal with such collateral in such manner as they may see fit, exercising all the rights and powers that go with ownership. The Superintendent of Insurance has been forced by the statutes defining his duties to accept the position of acting for conflicting and antagonistic interests in the rehabilitation proceedings. He must perforce seek to conserve the assets of the various companies engaged in the business of guaranteed mort-

gages. He clearly owes a duty to the creditors and the stockholders of these companies. In fact, section 3 of chapter 745 of the Laws of 1933 expressly provides that the Superintendent may exercise various powers " whenever in his opinion such action is necessary or advisable *for the protection of such guaranty corporation or the holders of such mortgage investment*." (Italics the court's.) This quotation in itself indicates that the Superintendent is directed to protect the guaranty corporations as well as their creditors. The creditors themselves are divided into two classes, the first consisting of general creditors who have no interest in the collateral securing guaranties issued by the company, and the second comprising certificate holders and others possessing such guaranties. In many instances the interests of those two classes of creditors conflict and the Superintendent thus occupies a dual role. To the extent that the guaranty companies are relieved, by releases and otherwise, of their obligations to the certificate holders or the others to whom the companies are liable upon the guaranties, the general creditors, and, to a more remote extent, the stockholders, will obviously profit thereby. If the guaranties are to remain, clearly the assets must be distributed among the certificate holders as well as the general creditors.

The court sees no reason why the Superintendent should remain in control of the underlying securities when the owners thereof elect to take over the management of such securities for their own benefit. The embarrassing position in which the Superintendent finds himself as a result of his statutory obligation to represent conflicting interests will be very largely relieved if those owning collateral in the possession of the guaranty companies taken over by the Superintendent are granted the rights to which their ownership entitles them and are permitted to withdraw such collateral and deal with it as they see fit. In this manner the gigantic and stupendous problem which confronts the Superintendent at this time, by reason of his duty to administer the vast amount of collateral securing guaranties issued by the companies will be reduced and simplified to a very considerable extent and the Superintendent will be enabled to confine himself primarily to the problem of administering the assets belonging to the guaranty companies in their own right as distinguished from the collateral which they hold in trust for others.

During the rehabilitation proceedings applications to lift the injunction orders so as to permit proceedings and actions against the Superintendent of Insurance have from time to time been granted, at times upon the consent of the Superintendent and at other times over his opposition. On each occasion, however,

the facts of the specific case were submitted to the court in order to enable it to determine whether the application was a proper one. /The difficulty with the present applications is that no specific facts relating to a particular issue or issues of certificates are set before the court. The applications are made by an attorney for unnamed clients. The latter are alleged to own certificates issued by the companies involved. Neither the certificates nor the issues of which they are part are identified. Nothing is said as to the provisions of the certificates, as to the character and identity of the collateral, or as to any other facts from which any conclusion can possibly be formed as to the rights of the clients. The motions are nothing more or less than blanket applications by an attorney representing unidentified holders of certificates, issued or guaranteed by the companies in question, for permission to bring suits or proceedings in whatever court or courts he may see fit for the appointment of trustees of collateral held by the companies, *including apparently collateral securing issues of certificates in which his clients have no interest whatsoever*. It must be manifest that a sweeping motion of this character cannot be granted. / Application may be made by the holder or holders of certificates of a specific issue or issues for leave to take specified actions or proceedings. If the facts set forth in such applications indicate that they possess merit they will be granted. In a proper case, as previously pointed out, the certificate holders may obtain leave to withdraw the collateral from the Superintendent and may even appoint trustees of their own choosing to replace the Superintendent. Adequate relief may be obtained as to specific collateral by the holders of certificates secured by such collateral. There is no necessity or legal justification for an application of this kind by one or more certificate holders looking toward the appointment of trustees for collateral *other than that which secures the certificates held by them*. The motion is, accordingly, denied, but without prejudice to applications by specific certificate holders for leave to take actions or proceedings against the Superintendent of Insurance in respect to the certificates held by them or the collateral securing said certificates, such applications to be predicated upon facts showing the propriety or merits of the steps proposed.

Before concluding, a few words as to the general situation of the certificate holders may not be amiss. The court is fully aware of the distressing condition in which tens of thousands of certificate holders find themselves, many of them persons of small means. Scores of millions of dollars belonging to trust funds for the benefit of widows and children are invested in these mortgage certificates. Numerous defaults in interest and principal have occurred. The

court is not unmindful of the fact that great dissatisfaction exists among the certificate holders who have failed to receive their interest and who are unable to obtain information concerning the steps taken or to be taken in their behalf. Thousands of helpless persons, many of whom have invested their all in these certificates, are in a confused and worried state of mind. Their pitiful plight has been vividly portrayed by the eminent counsel who argued in support of this application. Some of them undoubtedly believe their investments will prove to be a total loss. Perhaps it would not be inappropriate to remind these certificate holders that their investments are secured by mortgages on New York real estate. While it is true that there has been a collapse in the market values of realty due to an unprecedented depression, it may be said with confidence that the present market values do not reflect intrinsic worth. Many people have lost complete faith in the recuperative power of the wealthiest nation on earth. They forget real estate values usually rise and fall with the state of business generally. Fright and fear throughout the nation have caused constant and continuing restrictions of purchases of all commodities and manufactured goods. Price declines have been inevitable because buyers have been fewer than sellers. As business conditions improve the number of buyers must unquestionably increase and prices will rise accordingly. This applies to all commodities and manufactured goods. It is similarly true with respect to real estate. Experience has shown that New York real estate recovers from a price decline when panic subsides. There is no reason to doubt that New York real estate is fundamentally sound and that in due time going values will once more prevail. It is true that many parcels of real estate fail to show sufficient earnings from rentals to pay the necessary carrying charges in full and are, therefore, in distress. Many other parcels owned and occupied as homes are also in distress due to the diminished earning power of the owners. In the light of present day conditions it is easy to assert that the appraisals upon which the mortgage loans were made were excessive. Unquestionably this is true as to some parcels. However, many appraisals were conservatively made and the loans in those instances would seem to be fairly secure in spite of the fact that the properties in question may not be showing sufficient earnings at the present time to meet in full carrying and service charges.

The administration in Washington is making heroic efforts to restore confidence throughout the nation, and substantial progress is being made in the recovery process as is shown in statistics indicating increased car loadings, bank clearings, power consumption and re-employment, as well as by restorations and increases

of dividends by numerous corporations. The processes of recovery are cumulative and increased prices for commodities, manufactured goods and real estate must inevitably follow.

The problem confronting the holders of guaranteed mortgage certificates is rendered acute by their failure to receive any interest on their investments and by their inability to sell the certificates or even to borrow thereon. Since this matter was presented to the court the public press announces that the Reconstruction Finance Corporation has agreed to make loans available to the certificate holders and active steps are being taken in many directions designed to alleviate the unfortunate condition in which many certificate holders now find themselves. There is sound reason for certificate holders to be hopeful and optimistic as to the outlook for the future.