In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property of and Rehabilitate the NEW YORK TITLE AND MORTGAGE COMPANY.

In the Matter of the Application of SARAH R. HEILBRONER for an Order Appointing a Substituted Grantee of the Powers in Trust under Certificate Series F-1, Issued by the NEW YORK TITLE AND MORTGAGE COMPANY, under Agreement Dated February 21, 1927, in Place and Stead of NEW YORK TITLE AND MORTGAGE COMPANY, in Rehabilitation.*

Supreme Court, New York County, January 4, 1934.

* See, also, 150 Misc. 679.

*Henry Hetkin* and *Maass & Davidson* [*Alfred H. Hetkin* and *Alexander Rubin* of counsel], for the petitioner, for the motion.

*Greenbaum, Wolff & Ernst* [*Lawrence S. Greenbaum* of counsel], for George S. Van Schaick, Superintendent of Insurance of the State of New York, as rehabilitator of New York Title and Mortgage Company, opposed.

*Wagner, Quillinan & Rifkind* [*Simon H. Rifkind* of counsel], for the certificate holders of series F-1.

*Kramer & Kleinfeld* [*Samuel Kramer* and *Barnet Kaprow* of counsel], for the certificate holders of series BK.

*Sullivan & Cromwell*, for the certificate holders of series Q.

*Weil, Gotshal & Manges* and *Abraham A. Silberberg*, for the certificate holders of series C-2.

*Weisman, Quinn & Allen*, for the certificate holders of series B-1.

FRANKENTHALER, J. Petitioner, Sarah R. Heilbroner, has been the owner and holder, since April 2, 1929, of a certificate in the face amount of $5,000 issued by the New York Title and Mortgage Company (hereinafter referred to as the "company"). This certificate constitutes part of an issue described as series F-1 and represents an undivided interest in a group of bonds and mortgages deposited with a named depositary and guaranteed as to principal, and as to interest at the rate of five and one-half per cent per annum. As of November 30, 1933, there were outstanding series F-1 certificates in the aggregate principal sum of $27,574,576.37. The number of series F-1 certificate holders as of May 15, 1933, was 4,369. Petitioner's certificate, as well as the other series F-1 certificates, has been in default as to interest since April 17, 1933, on which date interest became due and was only partially paid. On August 4, 1933, the Superintendent of Insurance, pursuant to an order of this court, took possession of the property of the company as rehabilitator and he continues to act as such at the present time.

Each certificate provides that by the acceptance thereof the holder assents and agrees to all the terms of an agreement between the company and the depositary By the provisions of that agreement the company is appointed the irrevocable and exclusive agent of the certificate holders for the purpose of receiving, collecting and suing for the interest and principal of the deposited bonds and mortgages and satisfying the same in its own name. The company is empowered, "exclusively of all others," to decide when and how to enforce any of the provisions of the bonds and mortgages, to

enforce the same in its own name, to receive payments of principal or interest in advance of maturity, and to agree to extensions. In addition, the company is authorized to withdraw bonds and mortgages from deposit and to substitute other bonds and mortgages, the only limitation being that the principal sum of all deposited bonds and mortgages shall never be less than the principal amount of the outstanding certificates.

Petitioner contends that the broad powers thus conferred upon the company constitute powers in trust within the meaning of the Real Property Law (§§ 131, 137, 138); that the Superintendent of Insurance is an unsuitable person to act as grantee of these powers in trust by reason of his obligation under the Insurance Law to represent conflicting and irreconcilable interests, namely, the certificate holders, who are creditors, and the company sought to be rehabilitated, which is the debtor (See Laws of 1933, chap. 745, § 3); that the existence of the conflict of interest referred to has already been evidenced by various actions of the Superintendent, such as his refusal to institute foreclosure suits for the proper protection of the collateral against which the certificates have been issued; and that the proper protection of the rights of the certificate holders requires that the court exercise its inherent power to supervise and administer trusts by removing the Superintendent, *in so far as he is acting as donee of the powers in trust,* and substituting a trustee or trustees appointed by the court. Accordingly, petitioner asks (1) that the court designate a substituted grantee of the powers in trust, (2) that the Superintendent be directed to furnish to petitioner a list of the names and addresses of the other holders of series F-1 certificates for the purpose of enabling petitioner to serve notice of the application for the appointment of a substituted trustee upon all such certificate holders, and (3) that in the meantime, pending the hearing and determination of the motion for the appointment of a trustee, the court appoint a temporary receiver to take possession of and administer the bonds and mortgages against which the series F-1 certificates have been issued.

Four similar applications have been made by persons owning certificates of the New York Title and Mortgage Company, each relating to a different series, viz., series B-K, series C-2, series Q and series B-1. In addition, an application has been made by one Louis A. Green, owning certificates of series F-1 having an aggregate face value of $24,000, for an order directing the Superintendent to furnish a list of the names and addresses of the other holders of series F-1 certificates for the purpose of enabling Green to apply to this court for the appointment of a trustee or else commence an action seeking that relief.

In opposition to these applications the Superintendent of Insurance states that the five issues involved are at present in the process of reorganization " by five distinguished law firms of this city," series F-1 by Wagner, Quillinan & Rifkind, series Q by Sullivan & Cromwell, series C-2 by Weil, Gotschal & Manges, series B-1 by Weisman, Quinn & Allen, and series B-K by Kramer & Kleinfeld; that the Superintendent, in order to facilitate reorganizations under the Schackno Act, has permitted these attorneys access to the lists of the certificate holders of the respective issues and that " if these lists were generally accessible it would open the door to innumerable vexatious and obstructive proceedings on the part of the individuals who might take advantage of the information thus obtained to interfere with the orderly and legitimate reorganization under the Schackno Act." The Superintendent takes the stand that his approval or disapproval of a request by a certificate holder for a list of his fellow certificate holders is an administrative function vested in him by section 437 of the Insurance Law, and he attempts to justify his unwillingness to disclose the names and addresses of the certificate holders to those making the present applications on the ground that " it would interfere with the orderly proceedings under the Schackno Act to grant the said list to the present applicants who have not shown reasons to entitle them to it." He states that " the approval and consent of certificate holders representing many millions of dollars and a substantial percentage of the total issues have already been given to these [Schackno] proceedings," and that " it cannot be said, therefore, that these applications are made for the purpose of obtaining ' united action in respect to any matter affecting the interests of the certificate holders.' "

It is true that in the case of series F-1 and series C-2, holders of certificates of a very substantial face amount have held meetings for the purpose of attempting to agree upon a plan of reorganization under the Schackno Act. The same does not appear to be true, however, in respect to the other three issues, as to which little definite progress appears to have been made. It is important to note that even in the case of series F-1 the first meeting of certificate holders was not held until December 18, 1933, two days after the service of the present motion papers upon the Superintendent of Insurance. This is mentioned as some indication that the activity recently manifested on behalf of the certificate holders under the Schackno Act appears to have been accelerated by the making of the present applications and a somewhat similar previous application. (*Matter of Nemerov*, 149 Misc. 797.)

The Schackno Act (Laws of 1933, chap. 745) expressly provides

(§ 6) that a plan of reorganization may be promulgated in any one of three specified ways: (1) By the Superintendent of Insurance; (2) by "the holders of thirty-three and one-third percentum in principal amount of such mortgage investment," and (3) by a corporation organized under article XII of the Insurance Law (the New York Guaranteed Mortgage Corporation). A plan thus promulgated must be submitted by the Superintendent to all the other certificate holders of the issue involved and he is also obliged to present the plan to the court for approval upon notice to all such certificate holders. It is clear from the very wording of the Schackno Act that the Legislature contemplated that the certificate holders themselves were to have the same right to promulgate a proposed plan of reorganization as that given to the Superintendent of Insurance. This appears to have been overlooked by the Superintendent or his counsel. The papers submitted on the motions now before the court establish that the Superintendent or his counsel have taken it upon themselves (a) to select a firm of attorneys for each issue of certificates; (b) to furnish such firm with a list of the names and addresses of the certificate holders of that issue, and (c) to authorize said firm to endeavor to secure the approval or consent of the certificate holders to a suggested plan of reorganization submitted to the firm by counsel for the Superintendent. Thus, one of the attorneys above mentioned, in a letter annexed to one of the answering affidavits, dated December 18, 1933, states: " *The Superintendent has asked me* and I have consented to commence this effort to reduce to order what must otherwise inevitably become a very chaotic condition; " the printed memorandum issued by Greenbaum, Wolff & Ernst, as attorneys for the Superintendent, entitled " Memorandum of steps to be taken in corporate Schackno proceedings," commences with the following instructions:

" 1. G W & E [Greenbaum, Wolff & Ernst] notifies Superintendent of name of attorney.

" 2. G W & E receives approval.

" 3. G W & E gets in touch with attorney, advises name has been suggested by Superintendent that he may or may not be retained by the new company, and finds out if he is available to represent certificate holders.

" 4. G W & E notifies deputy in charge of company of designation.

" 5. G W & E notifies G W & E's attorney in company of designation.

" 6. G W & E procures letter from attorney (a) as to absence of conflict; (b) as to working in cooperation with and obtaining

approval of Protection Corporation; (c) as to understandings in respect to fees and disbursements.

" 7. G W & E notifies Protection Corporation of designation.

" 8. G W & E delivers set of forms to attorney."

And a letter written by New York Title and Mortgage Company in rehabilitation to petitioner's attorney states that " *the State Superintendent of Insurance has recently named attorneys* for the following Series, to take charge of proceedings looking to the incorporation of a certificate holder's corporation in each instance, to take over the entire Series and handle it on their own account." (Italics the court's.) Although any plan of reorganization initiated in accordance with this procedure is clearly, in practical effect, one promulgated by the Superintendent and not by the certificate holders, the Superintendent has issued instructions to the attorneys selected by him to the effect that they are not representing him and may not hold themselves out to the certificate holders as acting on his behalf. Undoubtedly, these instructions are due to the Superintendent's appreciation of the fact that the statute contains no provision empowering him to designate attorneys for the purpose of obtaining consents of certificate holders to a plan of reorganization proposed by him. On the contrary, the law expressly authorizes the Superintendent to promulgate a plan of reorganization without getting any consents of certificate holders and it outlines the method by which a plan thus promulgated shall be submitted to the certificate holders for their approval. (Laws of 1933, chap. 745, § 6.)

As previously observed, the Schackno Act authorizes certificate holders owning thirty-three and one-third in principal amount of the certificates of a given issue to promulgate a plan of reorganization of their own accord and without any assistance from or interference by the Superintendent. The procedure followed by the Superintendent does not give the certificate holders the rights which are theirs under the statute, for instead of permitting them to propose a plan of their own selection it imposes upon them a plan formulated either by the Superintendent himself, or by his counsel, or by the attorneys selected by the Superintendent or his counsel.

To a very great extent the Superintendent's opposition to the present applications, in so far as they relate to the disclosure of lists, proceeds upon the theory that certificate holders should not be permitted to come together and suggest or propose plans of their own selection for the approval of their associates, while the Superintendent is making efforts, through attorneys designated by him, to obtain the certificate holders' approval of a plan put forth by him or by such attorneys. Obviously, the Superintendent's position

in this respect is without merit, for it is in direct conflict with the mandate of the Legislature that holders of certificates representing one-third of a mortgage investment shall be permitted to promulgate a plan of their own. The preambles of the Schackno Act indicate that the Legislature was well aware of the widespread distribution of mortgage certificates, " held by hundreds of thousands of investors." The Legislature undoubtedly realized that certificate holders owning one-third of a mortgage investment could not, except in very rare instances, assemble for the purpose of sponsoring a plan of reorganization unless some means were afforded them of learning the identity of their fellow certificate holders. Indeed, the provision in section 437 of the Insurance Law (Laws of 1933, chap. 453), authorizing the disclosure of lists of certificate holders with the approval of the Superintendent of Insurance, evidences legislative recognition of the difficulty referred to and a desire to overcome it. If the Superintendent were permitted to withhold the names and addresses of certificate holders merely because he himself was endeavoring through attorneys of his own selection to obtain the approval of a given plan of reorganization, the provision of the Schackno Act permitting certificate holders themselves to promulgate a plan of their own would be emasculated and nullified. The certificate holders would possess an empty theoretical right of which they could not, as a practical matter, avail themselves. As the court stated in *Matter of Nemerov* (*supra*), there is nothing to indicate that the provision of section 437 of the Insurance Law, permitting the disclosure of lists with the approval of the Superintendent of Insurance, was intended to abridge or limit the court's inherent equity power to direct such disclosure in a proper case. On the contrary, the statute appears to have been intended to enlarge the remedies of certificate holders in respect to ascertaining the identity of their associates by allowing them to obtain lists without the necessity of an application to the court.

The fact that a certificate holder seeking to obtain the names and addresses of the other holders of certificates of the same issue may have no definite plan of reorganization to propose at the time of his application is insufficient reason, in itself, for denying him the opportunity of coming into contact with the others for the purpose of endeavoring to work out such a plan. Nor does the Superintendent's preference for a plan of reorganization promulgated by himself or his counsel constitute a valid reason for denying to the certificate holders the right given them by statute to propose a plan of their own choosing. The Superintendent's plan may never obtain the affirmative approval of holders of two-thirds in principal amount of the certificates, which is required by the Schackno Act before

any plan of reorganization can become effective. Even in the various issues involved in the present applications there is no assurance that the plans of reorganization which the attorneys selected by the Superintendent are seeking to promote will ultimately receive the approval of the requisite number of certificate holders. Moreover, although the act provides that at the time the court passes upon any plan or agreement promulgated by any of the three methods authorized by section 6 thereof, it contains no provision requiring the court to adopt the views of the Superintendent. On the contrary, it expressly authorizes the court " to approve, modify or disapprove such plan or agreement," leaving the court free to adopt a plan opposed by the Superintendent or to reject a plan approved by him. The Legislature has failed entirely to make any provision for a situation where it is impossible, either temporarily or permanently, to obtain consents in sufficient numbers to permit of reorganizations under the Schackno Act. Is it possible that the court is powerless to grant any relief to certificate holders in the absence of such legislation?

It is true, as the Superintendent urges, that a liberal policy in regard to the granting of applications for the disclosure of the names and addresses of certificate holders may at times result in various abuses such as the solicitation of certificate holders by unscrupulous attorneys motivated by their own selfish interests and not by any solicitude for the welfare of the certificate holders themselves. The situation confronting the certificate holders today is such, however, that the danger of such abuses is far outweighed by the advantages to be gained through maintaining a liberal attitude towards applications for lists of certificate holders. It must not be forgotten that each certificate holder is the owner of an undivided interest in the bonds and mortgages against which his certificate is issued. To deny him the right to ascertain who his fellow owners are is to leave him helpless to take any steps for his own protection and to force him to remain inactive and quiescent until attorneys selected by the Superintendent have submitted a plan of their own for his approval or disapproval. As previously pointed out, in the case of most of the issues here involved, no real activity appears to have been exhibited until the various applications made to the court produced action. There is no way of telling when similar action will be taken in respect to the many thousands of other issues of guaranteed mortgage certificates now outstanding. The certificate holders should not be obliged to wait patiently and passively until steps are taken in their behalf by others. They have an express statutory right to take action themselves and their efforts in that direction should be encouraged and not hindered.

Although many of the attorneys selected by the Superintendent to attempt to obtain the number of approvals required to effect a reorganization are prominent and outstanding attorneys of high repute, there is no legal basis for sanctioning these efforts by attorneys picked by the Superintendent and forbidding such efforts by attorneys chosen by certificate holders. Indeed, there is a serious question whether such endeavors on the part of attorneys who cannot even represent that they are acting on behalf of the Superintendent of Insurance are likely to produce the requisite number of consents in more than relatively few instances. Apparently the average certificate holder is distrustful of solicitation even where it is conducted by an agency of the government. The discouraging response of the certificate holders to the attempts of the New York Guaranteed Mortgage Corporation to obtain deposits of certificates tends to confirm this. The possibility of obtaining co-operation of certificate holders and ultimately the approval of a plan by the requisite number appears to be greater if a certificate holder is permitted to learn the identity of his associates and to bring them before the court upon proper notice for the purpose of endeavoring to work out a plan of reorganization under the supervision and with the assistance of the court itself. Many certificate holders who resent and distrust attempts to obtain their consents or approval will have no hesitancy to appear in court, either personally or through counsel, for the purpose of trying to solve the problems which confront them. The efforts of the certificate holders, acting of their own volition, should be permitted to go on concurrently with any steps in the same direction taken by the Superintendent.

Under present conditions, the most important problem presented by the vast amount of guaranteed mortgage certificates now outstanding is the proper management of the properties securing the bonds and mortgages against which the certificates have been issued. The force at the disposal of the Superintendent of Insurance, it is contended, is inadequate to manage these underlying properties as efficiently and economically as could be desired. At any rate, no matter how large a force the Superintendent might have available for management purposes, it is obvious that the certificate holders of each issue could obtain better results if they were able to take over the operation of the underlying properties from the Superintendent and intrust it to one directly responsible to them and subject to their control. Management by one having no real stake in the result cannot possibly be as successful and efficient as management by those directly and vitally interested in the outcome. The salvation of the certificate holders while real estate values remain at their present level lies in their ability to withdraw from the Superintendent to themselves the management

of their own bonds and mortgages and of the properties securing them. The Superintendent himself appears to recognize that he is holding the bonds and mortgages in a fiduciary capacity for those possessing the guaranties issued by the companies of which he is rehabilitator. In cases where the bonds and mortgages are owned by single individuals or institutions or where all the certificates issued against such bonds and mortgages are owned by single individuals or institutions the Superintendent, upon request, is turning them over to their owners. Even in those cases where certificates issued against bonds and mortgages are held by numerous individuals and/or institutions, the Superintendent is attempting to effect reorganizations, recognizing that the bonds and mortgages remain in his possession only because the widely scattered certificate holders have had no opportunity to organize and act as a unit, a situation being thus created in which it was necessary that some one act as their representative until they could take action for themselves.

Where it appears that a person applying for the disclosure of the names and addresses of certificate holders purchased the certificate held by him in order to bring legal proceedings or for other improper purposes, the application will be denied. The same result will follow in a case where the certificate held by the applicant was purchased at a very low price for purposes of speculation, for example after the regulations issued by the Superintendent in March, 1933. Where, however, the certificate of the applicant was bought in good faith and for a substantial sum with no improper motives, the court sees no valid reason for denying the application for the disclosure of names and addresses. The petitioner Heilbroner appears to come within this category. The same is true of Green, who has made a similar application, decided simultaneously herewith. Her good faith is evidenced by the offer of her counsel to permit the Superintendent to mail the notices of her application for the appointment of a trustee to the various certificate holders at her expense without revealing their names and addresses to her. It is true that the petitioner failed to make a request of the Superintendent for a list of the names and addresses prior to the making of this motion. It appears, however, that such a request was made on December 19, 1933, prior to the return day of the motion, and that the same has not been granted. On the contrary, the Superintendent has taken the position that the petitioner is acting in bad faith and is, therefore, not entitled to a list of the names and addresses. It is clear that a demand upon the Superintendent prior to the making of this application would have been futile.

It is unnecessary at this time to discuss that part of the present motion which seeks the appointment of a trustee in the place and stead of the Superintendent of Insurance on the theory that the

latter is in the possession of powers in trust. A consideration of the merits must await the return day of the notices to be sent to all the certificate holders of series F-1. Even if it should ultimately appear that there is no legal basis for the appointment of a trustee in the place and stead of the Superintendent of Insurance, the sending of notices to all the certificate holders will at least have the effect of bringing many of them before the court and giving them an opportunity to air their views and perhaps come to an agreement as to a definite course of action to be followed, either under the Schackno Act or otherwise. It may be that sufficient of the certificate holders will agree upon one plan or another to enable the court to make it effective under the Schackno Act. It may be that the certificate holders will approve the appointment of a trustee of their own selection either unanimously or in such numbers that the court can give effect to their wishes independently of the Schackno Act. The possibility of benefit to the certificate holders from bringing them all before the court is great. The possibility of injury to them as a result of this procedure is practically non-existent.

Under these circumstances, the court is of the opinion that the present motion should be granted to the extent of directing the Superintendent to permit the petitioner, at her expense, to make a copy of the last known names and addresses of the other holders of certificates of series F-1, or, at his option, to furnish the petitioner with such a list. The petitioner is directed to serve notice of the application for the appointment of a trustee upon the Superintendent and upon all the other certificate holders of series F-1 by serving notice of the application upon counsel for the Superintendent and mailing notices thereof to the certificate holders directed to the addresses furnished by the Superintendent, such mailing to take place at least ten days prior to the return date. In addition, a copy of the notice shall be published twice a week for one week in newspapers to be designated in the order to be entered herein. The notices are to be returnable at the Additional Special Term of this court, at ten-thirty A. M. on the date fixed in such notices.

In so far as a temporary receivership is sought, the motion is denied. There is no immediate need or pressing demand for this relief. The Superintendent of Insurance, a statutory administrator, is in possession and control and is handling the situation in such a manner that the rights of the petitioner and others similarly situated cannot be materially prejudiced during the short period of time elapsing prior to the return date of the notices.

In so far as the appointment of a trustee is applied for, the disposition of the motion is held in abeyance until the further order of the court. Settle order.