ACKEN v. NEW YORK TITLE & MORTGAGE CO. et al. (two cases).

District Court, N. D. New York.
March 31, 1934.

See, also, Tolfree v. New York Title & Mortgage Co., 72 F.(2d) 702.

Joseph Nemerov, of New York City (Max D. Steuer and Maurice J. Dix, both of New York City, of counsel), for complainant.

Greenbaum, Wolff & Ernst, of New York City, for defendants New York Title & Mortgage Co., George S. Van Schaick, and Edward McLoughlin.

Mudge, Stern, Williams & Tucker, of New York City (Joseph V. Kline, of New York City, of counsel), for defendant Bank of Manhattan.

Kramer & Kleinfeld, of New York City, for intervening defendant Isidor Silberberg in Series BK Suit.

Wagner, Quillinan & Rifkind, of New York City, for Reorganization Committee for certificate holders of Series F1, amici curiæ.

COOPER, District Judge.

These two suits are exactly the same except that each relates to a different series of mortgage certificates and that certain attorneys intervene in one suit and certain other attorneys appear as amici curiæ in the other suit, and neither of these attorneys appear in both suits.

For the purpose of simplification, these two suits may be spoken of as a single suit.

This suit is brought as a class suit by a nonresident complainant on behalf of himself and all others similarly situated against the defendants, all of whom are residents of this state and the defendant superintendent of insurance and his deputy, the defendant McLoughlin, are residents of this district. The bill of complaint asks this court to appoint successor trustees of certain underlying bonds and mortgages against which the defendant New York Title & Mortgage Company issued so-called guaranteed mortgage certificates in series. Motion is made for preliminary relief by the appointment of temporary successor trustees and certain incidental relief. The jurisdiction is based on diversity of citizenship and a subject-matter cognizable by this court of equity.

The bill of complaint also charges that certain statutes of the state of New York are violative of the Federal Constitution. Inasmuch as no preliminary injunction has been asked based on the unconstitutionality of state statutes, which, if asked, would require the action of a statutory court of three judges, the preliminary relief as distinguished from the relief to be embodied from the final judgment must be based on the diversity of citizenship in a suit, of which this court has jurisdiction, apart from the alleged unconstitutionality of the state statutes.

The defendant, the New York Title & Mortgage Company, hereafter called the defendant company, created in series mortgage certificates in and by which the defendant company transferred and assigned to the certificate holder an undivided and co-ordinate interest to the extent of the amount of the certificate in underlying bonds and mortgages against which the certificates were issued. These securities were deposited by the defendant company with the Bank of Manhattan Company (or its predecessors in interest) as depository. The certificate of the depository indorsed on each certificate is that the depository holds the underlying bonds and mortgages for the certificate holder who is acknowledged thereby to be the co-ordinate owner to the extent of the principal amount of the certificate.

The complainant is holder of BK–6584 in the amount of $5,000, and of certificate F1–8431 in the sum of $10,000.

In and by each certificate, the defendant company (1) guarantees to pay the princi-

pal and interest of such certificate as therein stated; (2) guarantees the payment of the principal and interest of the underlying bonds and mortgages.

Each certificate in the series BK is alike. Each certificate in the series F1 is alike. The provisions of the F1 and BK series are substantially the same.

The certificates of the F1 series contain these provisions:

"In accepting this certificate, the holder thereof agrees with the Company and with the holders of all certificates outstanding under the above described agreement, as follows:

"1. The Company is declared to be, and is, appointed irrevocably the agent and attorney of all holders of certificates of interest issued under said agreement and is empowered, exclusively of all others:

"(a) To Receive, collect and sue for the interest and principal of the deposited bonds and mortgages, and to satisfy and discharge the same, in its own name; (b) to adjust and collect fire insurance in case of loss by fire; (c) to decide when and how to enforce the provision of the said bonds and mortgages, and in its own name to enforce the same, and in all respects to pursue any remedies which any owner of the said bonds and mortgages might pursue; to receive payment of principal or interest thereon in advance of maturity thereof; to agree to extensions thereof; (d) to withdraw from deposit deposited bonds and substitute other first mortgages, accompanied by policite of title and certificates of fire insurance and certificates as to appraisal, in their place, to such an amount that the principal sum of all deposited bonds and mortgages shall never be less than the principal sum of the outstanding certificates of interest.

"2. The company may be the holder or owner or pledgee of one or more of the said certificates.

"3. Only the Company may collect interest or principal on the deposited bonds and mortgages, or give receipts or satisfactions therefor."

No reference to an 18 months' period of grace for payment of principal appears in this certificate, but it appears to be conceded that there was such 18 months' period of grace in practically all the series of certificates.

The only function of the depository is to hold the underlying security.

The defendant company is organized under New York Insurance Law (Consol. Laws, c. 28).

On March 15, 1933, pursuant to chapter 40 of the Laws of 1933, the defendant superintendent of insurance issued rules and regulations for the conduct by the defendant company of its business, wherein it was provided that: "Releases from guarantees shall be obtained whenever it is possible or desirable to do so."

The total amount of guaranteed mortgages and mortgage certificates of the defendant company outstanding on that date was $704,818,118.

Since that date holders of guarantees issued by the defendant company have released or agreed to release the defendant company from its guaranteed obligations to the extent of $270,157,918.18, leaving the guaranteed obligations outstanding to the amount of $434,660,200.27.

Whether or not any of the guaranteed mortgage certificate holders released the defendant company from its guarantee is disputed. Some inferences may be drawn from the superintendent's statements that there were some releases obtained.

About August 4, 1933, the defendant superintendent of insurance, acting under article 11 of the New York State Insurance Law (Consol. Laws N. Y., c. 28, § 400 et seq.), took possession of the property of the defendant company to rehabilitate the same and to remove the causes and conditions which made rehabilitation necessary. Further, the defendant superintendent of insurance and his deputy are now in possession of the property of the defendant company in rehabilitation.

The defendant company is now and for some time has been and will be unable to pay the principal and interest on the certificates according to their terms and to meet the obligations of its guarantees to pay the interest and matured principal of the underlying security for the reason it alleges that the owners of the property covered by the underlying security (bonds and mortgages) are and have for some time been unable or unwilling to pay the interest and installments or maturities as well as the taxes on the underlying mortgages.

It is contended by the defendant that the certificates provide that the guaranteed mortgage and mortgage certificates do not create a liability of the defendant company

on its guarantee for nonpayment of principal or installment of principal until 18 months after the same shall have been demanded by the certificate holder, if interest is fully paid in the meantime. There is no grace period for the payment of interest.

There is at present outstanding and unpaid guaranteed mortgage certificates in said series BK in the sum of $13,301,132.

That said series BK consists of 172 bonds secured by first mortgages on real property of the aggregate amount of $13,-264,525 as follows:

Property located in New York Co.—11 mortgages—$1,295,125.

Property located in Bronx Co.—27 mortgages—$2,316,750.

Property located in Kings Co.—134 mortgages—$9,652,650.

Said guaranteed mortgage certificates of complainant are part of a series of said series F1 of like tenor issued by the defendant company to an amount not exceeding in the aggregate the principal sum secured by the deposited collateral.

There were on August 4, 1933, outstanding and unpaid guaranteed mortgage certificates in said series F1 in the sum of $27,-574,576.37. There were 121 mortgages totaling $27,909,750 underlying the mortgage certificates of series F1.

Although interest on mortgages constituting the underlying security has not been paid by the mortgagors and taxes assessed against such mortgaged property have not been paid, owners are permitted to remain in possession of the mortgaged premises. For instance in series F1: 14 parcels in default for 1933; 16 parcels in default for the years 1932 and 1933; 8 parcels in default for the years 1931 to 1933; 1 parcel in default for the years 1930 to 1933; 1 parcel in default for the years 1929 to 1933.

A similar condition exists as to the underlying bonds and mortgages on the BK series.

. On August 4, 1933, the arrears on the properties covered by the 121 mortgages underlying the F1 series were as follows, as reported by the superintendent of insurance:

| | |
|---|---|
| Taxes | $1,118,119.85 |
| Interest | 805,060.52 |
| Amortization (overdue principal) | 766,341.67 |
| **Total** | **$2,689,522.04** |

On the same day, according to the same report, the arrears on the properties covered by mortgages underlying the BK series were as follows:

| | |
|---|---|
| Taxes | $361,423.43 |
| Interest | 290,323.37 |
| Amortization | 80,775.00 |
| **Total** | **$732,521.80** |

A similar condition exists as to the other bonds and mortgages and the property covered thereby underlying other series of mortgage certificates issued by this company.

Neither company nor the superintendent of insurance have taken adequate proceedings to protect the certificate holders because of such existing defaults in interest and taxes.

The superintendent's report, supra, shows that in 35 mortgages, totaling over $10,034,350 of those underlying the F1 series, the mortgagors made assignments of the rents to the defendant company which is collecting the same.

The rents so collected and the interest and installments of principal paid on the underlying mortgages, though trust funds for the certificate holders, have been commingled with the general funds of the company and used to meet its general expenses, and in some instances to reimburse the company for advancement of interest to the mortgage or certificate holder. Matter of Central Hanover Bank, 150 Misc. 351, 268 N. Y. S. 572, 581, and City Bank Farmers' Trust Company, 150 Misc. 174, 268 N. Y. S. 554, 568.

On August 4, 1933, there was cash in the possession of the defendant company for series F1 in the sum of $466,181.19, and series BK in the sum of $74,485.36.

On June 30, 1933, the total amount of guaranteed mortgages and certificates of the defendant company, upon which grace had expired and which had not been paid, amounted to $1,917,532.01, and the total amount of guaranteed mortgages and certificates as to which the grace period had commenced but had not expired was $37,-563,320.31. These amounts were undoubtedly greater at the commencement of this suit and still greater now. Although duly demanded, the defendant company has failed to pay interest on these guaranteed mortgages and mortgage certificates; some of the unpaid interest being nearly a year overdue. Taxes and water taxes in default on

many of the mortgaged properties constitute a lien ahead of the mortgage, and some are some years in default with accumulated interest and penalties, and the defendant company has not paid the same as in its guarantee provided.

Such certificates of the defendant company were sold among certificate holders scattered all over the United States and elsewhere. Each series has many thousands of certificate holders.

The court does not understand that these things are disputed.

In some instances, because of default of the bonds and mortgages constituting the underlying security, foreclosure was had. In series F1, 38 mortgages in the amount of $7,720,275 were foreclosed by the defendant company. Title was taken in some cases in the name of the Land Estates, or a company known as Liberder, both of which companies are now in receivership. The income from the properties in which these companies have legal title, but which are the property of the certificate holders, is not being paid to the certificate holders, but is diverted in the receivership of these companies. No steps whatsoever have been taken to recover these properties for the certificate holders.

Although foreclosure in some instances should be instituted by the defendant company without expense to the guaranty holder, the superintendent has refused to commence such actions unless sums sufficient to cover disbursements and taxes are deposited with him by the certificate holders. Matter of Central Hanover Bank & Trust Co., 149 Misc. 488, 268 N. Y. S. 572; Matter of City Bank Farmers' Trust Co., 149 Misc. 498, 268 N. Y. S. 554.

This case is limited to the mortgage then before the court, but the refusal of the superintendent of insurance ran to foreclosures generally.

The complainant contends:

That the mortgage certificates sold and guaranteed by the defendant company pass the equitable ownership in the underlying bonds and mortgages to the mortgage certificate holders in proportionate shares, leaving the legal title in the defendant company, and that only in trust for the mortgage certificate holders.

That by the mortgage certificates the defendant company was a mere trustee for the certificate holders.

That the arrangements under which mortgage certificates were sold and guaranteed contemplated that all rights of the defendant company to the underlying bonds and mortgages and the collection of principal and interest thereon ceased when the company defaulted in the performance of their guaranty contract as here.

That this court of equity, charged with the execution and administration of trusts, should appoint a successor trustee or trustees to the defendant company as to all underlying mortgages held in trust by the defendant company for the benefit of the mortgage certificate holders, to protect, preserve, and administer the same under the direction of the court.

That it was not contemplated in any state statute that the state superintendent of insurance should be the successor trustee of the defendant company, and further, that if it were so contemplated, the statutory duties imposed upon the superintendent disqualify him from further acting as such trustee, and that in the attempt to carry out his conflicting duties he has acted for the benefit of the company and to the detriment of the mortgage certificate holders and should be replaced by a trustee appointed by the court whose sole duty is to act for the benefit for the certificate holders.

At the outset, the defendants challenge the jurisdiction of the court on various grounds:

1. The underlying mortgages are being administered by the superintendent of insurance under the supervision of the state court, and this property has passed into the custody of the state court and is withdrawn from the jurisdiction of the federal court.

2. (a) This is not a class suit.

(b) Even if technically a class suit the court should not allow a merely colorable class suit to proceed until it is shown that the certificate holders are a harmonious whole.

(c) All certificate holders are indispensable parties plaintiff, and when so joined the diversity of citizenship fails and jurisdiction fails.

3. This court is urged to deny jurisdiction on the ground of comity.

4. The defendants also urge, assuming that this court has power to displace the superintendent of insurance as trustee and the state court of their statutory functions, no facts appear warranting such action.

As far as jurisdiction of the federal court is concerned, that jurisdiction may be sustained because of the allegation that material portions of the Insurance Law of the state and the Schackno Act, which is chapter 745 of the Laws of 1933, and chapter 40 of the Laws of 1933, are in violation of the Federal Constitution.

That this is not merely a colorable allegation to give jurisdiction to the federal court would reasonably follow from the allegation that if the Schackno Act is to be construed as legislative appointment of a successor trustee to the guaranty company, its constitutionality is questionable. Also from the fact that the Appellate Division in the First Department in the case of Moses v. Guaranteed Mortgage Co., 239 App. Div. 703, 268 N. Y. S. 530, has declared unconstitutional chapter 41 of the Laws of 1933, relating to the superintendent of banks, which is similar to chapter 40 of the Laws of 1933, relating to the banking board.

Moreover, Judge Frankenthaler of the state Supreme Court has decided since this suit was brought, that the Schackno Act is largely in conflict with the Federal Constitution in the case of People ex rel. Van Schaick as Superintendent of Insurance, etc., v. N. Y. Title & Mortgage Co., 150 Misc. 467, 270 N. Y. S. 450. See, also, Tower-Hill, etc., v. Piedmont Coal Company (C. C. A. 4) 64 F.(2d) 817, 91 A. L. R. 648.

Where the constitutional question is not merely colorable and requires or may require decision if other federal questions fail, the jurisdiction of the federal court exists and must be upheld. Smith v. Kansas City Title & Trust Co., 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577.

This constitutional question perhaps is not important for preliminary relief where the state superintendent is not sought to be enjoined temporarily under section 266 of the Judicial Code (28 USCA § 380) from enforcement of the state statute.

But that a court of equity may eventually decide all questions between the parties and award complete relief where it has obtained jurisdiction of some portion of a controversy, is well established. Hartford Accident & Indemnity Co. v. Southern Pacific Co., 273 U. S. 207, 47 S. Ct. 357, 71 L. Ed. 612.

The application of that doctrine to this case need not be presently decided.

The defendants strenuously contend that this subject is essentially one in rem and not in personam, and that the res, including the trust assets consisting of the underlying bonds and mortgages, as well as the property of the defendant company not held in trust, is in custodia legis, that is, in the custody of the state Supreme Court, and therefore not subject to the jurisdiction of this court.

The defendants rely on certain New York and federal cases. The leading New York cases are: Matter of Casualty Company of America, 244 N. Y. 443, 155 N. E. 735 (1927); Isaac v. Marcus, 258 N. Y. 257, 179 N. E. 487 (1932); Matter of Empire State Surety Company, 164 App. Div. 586, 150 N. Y. S. 398, appeal dismissed 214 N. Y. 659, 108 N. E. 1093; Matter of Second Russian Insurance Co., 219 App. Div. 46, 219 N. Y. S. 366, affirmed 244 N. Y. 606, 155 N. E. 916.

Though many federal cases are cited the significant ones are Lion Bonding Company v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871; Oneil v. Welch (C. C. A.) 245 F. 261.

The question involved in the Casualty Company Case was whether the superintendent of insurance was the sole arbiter of the value of the services of counsel employed by him or whether the court had some supervisory power to reverse his decision and fix adequate compensation.

The Court of Appeals held that the Supreme Court did have supervisory power to fix the compensation by the very terms of the statute, which both in section 63, subds. 3 and 6 (Consol. Laws N. Y. c. 28), expressly provided that the expenses incurred should be subject to the approval of the court.

In subdivision 6 and in subdivision 3 it is stated that: "Such liquidation shall be made by and under the direction of such superintendent, and his successors in office, who may deal with the property and business of such corporation in their own names as superintendents, or in the name of the corporation, as the court may direct."

By virtue of these two decisions and by assimilating the matter to the winding up of the business in the hands of the receiver, the Court of Appeals held that such supervisory power existed in the court.

But in that case the court nowhere held that the property was in the custody of the Supreme Court or custodia legis in any sense, nor did it hold that the superintendent of insurance was the agent of the court.

528

The court by necessary inference negatived the status of the superintendent of insurance as an agent of the judicial power of the government when the court said: "The system of liquidation by receivers specially appointed had proved to be dilatory and wasteful. The Legislature substituted administration by a department of the government."

Nowhere in the opinion are the words "custodia legis" or any similar phrase used.

There is no later Court of Appeals decision defining the status of the superintendent of insurance; nor is there any case cited in the Court of Appeals Casualty Company Case holding that in case of a domestic insurance company the superintendent of insurance is an agent of the court, or enjoys the status of receiver.

The Court of Appeals in Isaac v. Marcus, 258 N. Y. 257, 179 N. E. 487, 489, had before it the right of the stockholder to sue in behalf of the corporation in cases where the superintendent of banks was engaged in liquidation of the affairs of the bank. The court held that under the circumstances existing both the stockholders and the superintendent of banks could not be permitted to bring an action looking to the same end, under ordinary circumstances, and that the right of the superintendent was paramount. It held that the court could not substitute its discretion for his own and direct him to bring the action where the statute leaves the discretion to him (the superintendent of banks). Could any other than an express statement to that effect give clearer inference that he was not the agent of the court, if the court could not control his jurisdiction? A court has control over its agent only.

The court elsewhere defined the status of the superintendent of banks in these words: "The superintendent of banks is in effect the statutory receiver of the banking corporation while liquidating its affairs. That was the clear intent and result of the statute."

Clearly, then, if he was a statutory receiver he was not a court receiver. The court in that case held that before the stockholder could begin such a stockholder's action it must satisfy the court upon due notice that by failure or refusal of the superintendent of banks to bring the action at the time in question the recovery might be imperiled. True, the court also said: "We have said that the superintendent of banks is in effect a statutory receiver, yet for some purposes the assets in his hands may be regarded as 'in custodia legis.' Lafayette Trust Co. v. Beggs, 213 N. Y. 280, 286, 107 N. E. 644, 646."

But these words are followed immediately by the words above quoted: "The court may not substitute its discretion for his own where the statute leaves discretion to him."

Matter of Empire State Surety Company, 164 App. Div. 586, 150 N. Y. S. 398, has no application here, for the claimant who first filed his claim with the superintendent of insurance and then brought suit in the United States court in another state was held guilty of contempt of the injunction of the New York state Supreme Court, since he had first filed his claim with the superintendent of insurance.

Matter of Beha, Superintendent of Insurance, 219 App. Div. 46, 219 N. Y. S. 366, has no analogy.

Clearly, then, if the superintendent of banks is not the agent of the court but is a member of the administrative, that is, the executive branch of the government, the assets are not in the custody of the court, and the doctrine of comity of courts, requiring one court to refrain from action relative to res when that res is in the custody of another court through its agent, could have no application.

In May, 1932, the Appellate Division in the Third Department in the case of the Matter of Broderick, 235 App. Div. 281, 257 N. Y. S. 382, 384, the court said: "The superintendent of banks, acting as a statutory receiver, is an administrative officer. Matter of Union Bank, 204 N. Y. 313, 97 N. E. 737; Richards v. Robin, 178 App. Div. 535, 165 N. Y. S. 780. He is clothed with all the powers and duties of a receiver, and, upon taking possession and control of the property and business of a bank, he becomes in equity the owner of its property. The only title which remains in the bank is merely formal and is held in trust for the superintendent. Lafayette Trust Co. v. Beggs, 213 N. Y. 280, 107 N. E. 644. The superintendent is of the administrative, not the judicial, branch of the government. His possession is statutory and not that of the court. The liquidation is not the result of any action or proceeding in court, but is pursuant to the statutory power conferred upon the superintendent. He, not the court, is authorized to sell or otherwise dispose of the property of the bank. See Matter of Union Bank of Brooklyn, 176 App. Div. 477, 486,

163 N. Y. S. 485, 492, where it is said: 'It is not for the court to set itself above the judgment and discretion of administrative officers to whom the law commits a decision, for thereby the court but confronts its opinion with his opinion.' The court may not substitute its discretion for his own where the statute leaves discretion to him. Isaac v. Marcus, 258 N. Y. 257, 179 N. E. 487."

It will be noticed that though Isaac v. Marcus, 258 N. Y. 257, 179 N. E. 487, was cited, no reference is made to the matter of Casualty Company Case in 244 N. Y. 443, 155 N. E. 735, in Appellate Division decisions in 235 A. D. 281, 257 N. Y. S. 382. That the statutory procedure for liquidation of banks by the superintendent of banks and that for the liquidation of insurance companies by the superintendent of insurance are essentially the same is contended by the defendants. The superintendent of banks may take possession without the order of the court. The superintendent of insurance must first obtain the order of the court.

The difference probably arises from the necessity of immediately taking possession of banks, while the delay in the case of insurance companies is not so detrimental to the public welfare. But the mere necessity of obtaining the order of the court by the superintendent of insurance to begin the exercise of his statutory powers and duties has no effect whatever in making him an agent of the court rather than a member of the executive department of the government, as the cases almost uniformly say he is.

It has been held by the Court of Appeals of the state of New York that the superintendent of banks is an administrative officer.

In the Matter of Union Bank, 204 N. Y. 313, 97 N. E. 737, 740, in one of the opinions it is said: "The superintendent of banks is one of the administrative officers of the state charged with the duty of looking after the banks, and his deputies and examiners are ministerial officers acting under his direction. Neither is vested with judicial powers. * * *"

In Richards v. Robin, 178 App. Div. 535, 165 N. Y. S. 780 (First Department) the court said that the superintendent of banks is a statutory receiver, citing as authority the matter of Union Bank, 204 N. Y. 313, 97 N. E. 737.

In the Matter of Union Bank of Brooklyn, 176 App. Div. 477, 480, 163 N. Y. S. 485, 489, the court said of the superintendent of banks: "He is not a part of the judicial branch of the government. He does not take his office nor derive any of his original powers from it. He is of the administrative branch of the government, appointed by the Governor and confirmed by the Senate. * * * He is a state officer. * * * His possession is not that of the court. * * * The fact that he must receive the sanction of the court before certain steps in his procedure are effective * * * does not imply that the liquidation itself is judicial. A receiver is the creature of the court."

In the Matter of Horowitz, 235 App. Div. 248, 250, 256 N. Y. S. 705, 707, the Appellate Division in the First Department said: "The liquidation of banks under the superintendent of banks is not a judicial function but an administrative power conferred by the Legislature. * * *"

This very question has been decided in this court in Farrell v. Stoddard, Superintendent of Insurance, 1 F.(2d) 802. After this decision, judgment was granted against the defendant superintendent of insurance (opinion reported under the name of Porter v. Beha (D. C.) in 8 F.(2d) 65).

The latter case was affirmed in the Circuit Court of Appeals in this circuit in Porter v. Beha, 12 F.(2d) 513, where the court defined the status of the superintendent of banks in these words: "Defendant is the superintendent of insurance of New York, an appointive official of that state. * * *"

A receiver appointed by the Comptroller of the Currency of the United States is not an officer of any court; and the fact that such a receiver must in certain circumstances procure an order if the court does not make him an officer of the court nor place the assets within its control as if a receiver is appointed by the court. Matter of Chetwood, 165 U. S. 457, 17 S. Ct. 385, 41 L. Ed. 782. See, also, Allen v. U. S. (C. C. A.) 285 F. 679.

When not forbidden by Constitution, a state may endow its courts with certain administrative functions. Prentis v. A. C. Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150 (Virginia Law); Bacon v. Rutland R. Co., 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538 (Vermont Case); Federal Radio Com. v. General Electric Co., 281 U. S. 464, 50 S. Ct. 389, 74 L. Ed. 969; Nelson v. First National Bank, 42 F.(2d) 30 (C. C. A.); Matter of Horowitz, 235 App. Div. 248, 256 N. Y. S. 705.

In so far as the courts of this state are called upon to perform any function in aid

of the respective superintendents under the insurance and banking laws of the state, such functions are administrative in their nature and not judicial.

On the other hand, the Legislature cannot endow the executive department of the government with any judicial functions. Such functions under the Constitution are reserved for the judicial branch of the state government.

That both superintendents are agencies of the executive department admits of no doubt and has been authoritatively decided by the cases above cited.

■ Hence the custody of the superintendent of insurance, whether aided or supervised in some limited way by the courts or not, is in no sense the custody of the state court. Expressions to the effect that his custody is custodia legis in some of the decisions, such as Lafayette Trust Company v. Beggs, supra, are not to be taken as meaning that his custody is that of an agent of the state court; that is custody of the court.

Such expressions where used are either obiter dicta, or must be taken to mean in lawful custody; that is, in a custody authorized by the law of the state.

■ When the Legislature or the Governor appoints the state agent and he takes his authority from the statute, that is, that the statute and not the court is his chart or guide, he cannot be the agent of the court. There can be no agent of the court unless he derives his appointment and his authority from the court, or, if otherwise appointed, he must be subject at all times to the discretion of the court. Matter of Union Bank of Brooklyn, 176 App. Div. 477, 482, 483, 163 N. Y. S. 485.

Manifestly the superintendent of insurance is no such agent of the court.

■ In order that the property shall be in custodia legis it must be in the possession of another court. This rule has been held from the earliest times by the United States Supreme Court.

In Buck v. Colbath, 3 Wall. (70 U. S.) 334, 341, 18 L. Ed. 257, the court said: "Whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being; and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises."

This case has been cited with approval and followed in many subsequent cases, among which are Covell v. Heyman, 111 U. S. 176, 180, 4 S. Ct. 355, 28 L. Ed. 390, and most recently cited in Gross v. Irving Trust Company, 289 U. S. 342, 344, 53 S. Ct. 605, 77 L. Ed. 1243, 90 A. L. R. 1215.

■ This right to the court first taking the property into its custody to be immune from the seizure of that property by another court of competent jurisdiction rests largely upon the doctrine of comity. Kline v. Burke Construction Company, 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077.

■ That administrative and legislative agencies are not courts or agents of the court and do not come within this doctrine of comity is well settled.

In McNeill v. Southern Railway Co., 202 U. S. 543, 26 S. Ct. 722, 50 L. Ed. 1142, the railway regulating commission was called the North Carolina Corporation Commission. By the Constitution of the state this Corporation Commission was made a court of record. By the statute it was empowered to adopt rules and regulations and to impose fines for disobedience of its orders. In the McNeill Case, the Supreme Court did not expressly hold that it was not a court of record, but it held that its order was an interference with interstate commerce and in violation of the federal constitutional power over interstate commerce, which necessarily negatived any conception of it as a court, since the case did not come upon appeal from the state court.

Other like administrative bodies have been held not to be courts.

In Mississippi Railroad Commission v. Illinois Central Railway Co., 203 U. S. 335, 27 S. Ct. 90, 51 L. Ed. 209, the Mississippi Railway Commission was held not a court but a mere administrative agency of the state as held by the Mississippi court.

Of similar effect is Bacon v. Rutland Railroad Co., 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538.

The final reliance of the defendants is upon the cases of Lion Bonding Company v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871, and O'Neil v. Welch (C. C. A.) 245 F. 261.

In the Lion Bonding Company Case, there were two appeals before the court;

one in the Karatz Case (Lion Bonding & Surety Co. v. Karatz), 280 F. 532 (C. C. A.), arising in the federal District Court in Minnesota, and the other in the Hertz Case (Hertz v. Lion Bonding & Surety Co.) 280 F. 540 (C. C. A.), arising in the federal District Court in Nebraska.

In the Karatz Case, a state body called the department of trade and commerce applied to the state court of Nebraska for an order to show cause why the department of trade and commerce should not take over the business of the Lion Bonding Company and conduct it. After notice and full order, the state court entered a decree in accordance with the prayer, and the department immediately entered upon the duties prescribed by decree and took possession of all the property of the insurance company in the state of Nebraska.

Later, upon supplemental petition, the court directed the liquidation of the company. Upon the supplemental petition the insurance company filed an answer in which it admitted all material allegations contained in the supplemental petition and joined in the prayer thereof. On the same day the Nebraska court entered an order in accordance with the prayer of the supplemental petition all action of the department being made subject to the direction of the court.

Between the filing of the original and supplemental petitions Karatz obtained appointment by the federal court of Minnesota of receivers of property of the insurance company located in that district. The temporary appointment was made permanent and the judgment of the District Court affirmed by the Circuit Court of Appeals.

On appeal this decree of the Circuit Court of Appeals was reversed, and the grounds stated are these:

First. There was want of equity for the suit was brought by an unsecured simple contract creditor. The case of Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763, was cited as authority. In the Karatz Case the company did not file an answer admitting the allegations of the complaint and consenting to the appointment of a receiver submitting to the jurisdiction of the court, as is usual in such case. On the contrary, the company contested the matter bitterly and under the Pusey & Jones Case there was lack of equity.

The second ground was that the court was without jurisdiction because the claim was less than $3,000.

So far as the Karatz Case is concerned, the court rested its decision upon these two grounds and reversed the Circuit Court of Appeals, stating that it was unnecessary to consider whether the proceeding in the Nebraska court was a bar to the Karatz Case in the Minnesota federal court.

The other suit was called the Hertz Case. The Minnesota receivers were not appointed ancillary receivers in Nebraska. They merely sued in the federal District Court in Nebraska as Minnesota receivers relying upon section 56 of the Judicial Code (28 US CA § 117) which permitted such a suit where there is property of a fixed character and subject to the suit lying in different states of the same judicial district.

The Supreme Court held that since the assets of the insurance company consisting of stocks and bonds, etc., section 56 (28 USCA § 117) was not applicable to that case because they were not of the fixed character required to bring the case within the section. The court then went on to say that since, because of such defect, Minnesota receivers Hertz & Levin had no standing whatever in the Nebraska federal court, the express authorization of the Minnesota court to apply for aid to other courts could not aid them in this respect.

The Hertz Case might have been decided on these grounds, but the Supreme Court opinion went further and held that even if the receiver had secured ancillary appointment in the Nebraska federal court the Hertz bill should have been dismissed because the property was then in the custody of the state court in a proceeding in rem.

The contention of the Minnesota receivers that there was a difference in the status of the case in the state court under the original petition and the status under supplemental petition, between which times the receiver was appointed by the federal court in Minnesota, was rejected by the Supreme Court.

The opinion expressly says that every act of the department was made subject to the direction of the court. It may be inferred that such requirement was within the order or it may equally well be inferred that such order complied with the state statute.

It is clear then, that although the department of trade and commerce was not appointed receiver by the court of Nebraska, that department was subject in its every act to the direction of the state court and was its agent subject to its direction at all times.

532

It is clear then that the Nebraska statute must differ greatly from the New York statute. The New York statute has been construed consistently as making the superintendent of insurance part of the administrative (executive) branch of the government and not subject to the direction of the court, except in a few particulars, and in all these particulars the Supreme Court of the state of New York acts in an administrative, and not in a judicial, capacity. That the Supreme Court of New York state cannot direct the superintendent of insurance except in a few particulars set forth in the statute, is clear from the statute itself and from the well-considered authorities cited herein, and there are no New York state cases which hold to the contrary.

O'Neil v. Welch (C. C. A.) 235 F. 261, was a case where a nonresident stockholder brought suit in the federal court for appointment of a receiver of an insolvent state insurance corporation, to which the company consented after having previously appeared in the state court, answered the order of that court made upon application of the insurance commissioner in Pennsylvania, and thereby submitted itself to the jurisdiction of the state court.

The court said that there was no question of the power of the nonresident stockholder to invoke the equity powers of the federal court, and that such rights could not be impaired by any state statute.

The court further said that a prior judicial proceeding was pending in the state court affecting res which the state court drew to its custody by injunction until the state court acting as a court could judicially determine whether or not to liquidate the insurance company. To this the insurance company consented by its appearance and adjournment in the state court. The insurance department at this time had not acquired any interest in the assets of the company. In fact it did not know whether the court after the judicial proceeding would permit the insurance department to liquidate the company.

Since the state court was a court of competent and co-ordinate jurisdiction, the prior right of the state court to the custody of the property was upheld.

It must not be overlooked that the federal suit with its accompanying appointment of a receiver by consent of the company was a collusive suit; but since the stockholder plaintiff inherited the infirmities of the insurance company from which he derived his rights, he was bound by the infirmities of the company, and the company could not use its stockholders as a vehicle by which to withdraw its prior consent to the state court's custody of its assets, pending the latter's judicial proceeding to determine whether or not to order dissolution of the company.

This, like the Lion Bonding Company Case, was a proceeding in a state court under the Pennsylvania statute relating to property, and was not an administrative proceeding as in this state.

■ The federal courts are bound to take the construction of the state statutes laid down by the courts of this state, and these decisions clearly indicate that the state superintendent of insurance is not the agent of the court and his custody is not the custody of the court.

These considerations also dispose of defendant's contention that this court will decline to act for reasons of comity. Comity is the foundation of the doctrine that one court will not interfere with property in the custody of another. Kline v. Burke Construction Company, 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077, supra.

The foregoing cases relate to assets unquestionably the property of the insurance company held to be in the custody of the state court and to which assets all creditors were entitled to share ratably.

■ These underlying bonds and mortgages here involved are in equity exclusively the property of the mortgage certificate holders and can never become the property of the guaranty company until all such mortgage certificates and interest are fully paid.

By the very terms of the mortgage certificates, such certificates constitute a proportional assignment of these underlying bonds and mortgages to the various certificate holders.

Of course, the whole scheme of mortgage certificates contemplates the payment of these certificates out of the moneys paid upon the underlying bonds and mortgages, for the amount of the latter and of the certificates is the same.

Under this scheme none of the proceeds of the underlying bonds and mortgages will ever become the sole property of the guaranty company and the latter will never receive any of such proceeds.

The only moneys to be received by the guaranty company from such underlying bonds and mortgages is the service charge

of one-half of 1 per cent. out of the 5, 5½ or 6 per cent. interest paid by the mortgagors on the underlying bonds and mortgages.

Unquestionably the certificate holders are the cestui que trustent of all the underlying bonds and mortgages, and no other creditors or stockholders of the guaranty company can ever share therein beyond the amount of the service charge.

 The guaranty company being in default, its agency may be terminated and the certificate holders are entitled to the possession of underlying bonds and mortgages under the well-considered opinions of Judge Frankenthaler of the state Supreme Court in Central Hanover Bank & Trust Company, 149 Misc. 488, 268 N. Y. S. 572; City Bank Farmers Trust Company, 149 Misc. 498, 268 N. Y. S. 554.

 Since the mortgage certificate holders are so numerous, so widely scattered that their identity and location cannot be ascertained without the co-operation of the defendant superintendent of insurance which so far has not been offered except to those selected by him to undertake rehabilitation of the guaranty companies or formation of a corporation under the state statute to take over the underlying bonds and mortgages, a court of equity may entertain an application for the appointment of a successor trustee to the defendant company and to the superintendent of insurance, if he be such trustee.

True, Judge Frankenthaler thought that it would require all, or practically all, of the certificate holders to unite in an application to him to obtain possession of the underlying bonds and mortgages (Matter of Nemerov, 149 Misc. 797, 268 N. Y. S. 588), but he must be deemed to have so decided under the limited powers of the order of the Appellate Division designating him to sit in rehabilitation in the mortgage guaranty company matters.

At any rate, he did not have before him, sitting as equity court, any application for the appointment of a successor trustee, and he did not decide any such questions.

The defendant's counsel recognize that there may be a distinction between the underlying bonds and mortgages as trust assets especially held in trust for the mortgage certificate holders and the general assets of the corporation, but they claim the distinction is unsubstantiated and that in any event by the Schackno Act the Legislature of 1933 has especially included such assets held in trust as property of the company, to be administered by the superintendent of insurance under the provisions of the Insurance Law and under the rehabilitation proceedings of the Schackno Act.

Judge Frankenthaler distinguished between these two classes of property in the case of People ex rel. Van Schaick v. N. Y. Title & Mortgage Co., 150 Misc. 467, 270 N. Y. S. 450, 459, when he said: "It is apparent from the foregoing that each of the three subdivisions of section 4 of the act [Schackno Act] reveals the same defect, viz., a failure to distinguish between mortgages which constitute general assets of the guaranty companies and form part of its capital and surplus on the one hand and mortgages which are held by the guaranty companies as agent or fiduciary for certificate holders who own them on the other hand."

This also indicates, as elsewhere indicated in the opinion, that certificate holders own these underlying bonds and mortgages.

In the same case, Judge Frankenthaler has held almost all the provisions of the Schackno Act to be unconstitutional. Most of his holdings in this respect relate to violations of the Federal Constitution and not of that of the state.

This court is prohibited under section 266 of the Federal Code (28 USCA § 380) from deciding except in final judgment the unconstitutionality of the state statute and from enjoining state officers from executing a state statute unless a statutory court of three judges is called to pass on such constitutionality and shall hold such statute unconstitutional. This court is not aided either by the decision of the Appellate Division of the First Department in the case of Moses and Burney v. Guaranteed Mortgage Co., 239 App. Div. 703, 268 N. Y. S. 530, also holding chapter 41 of the Laws of 1933 (similar to chapter 40 of the Laws of 1933) unconstitutional for failure to specify the period of the emergency.

It is urged by the complainant that if the statute be construed as a legislative appointment of the superintendent of insurance as a successor trustee to the defendant company, it is invalid for lack of power on the part of the Legislature so to do.

Powers v. Bergen, 6 N. Y. 358, is cited in support of this contention.

Though not free from doubt, this court on this preliminary motion is probably bound

by the statute as enacted and may not accept the decision of a lower state court as to its violation of the Federal Constitution.

It is well-settled law that if a statute may be constitutional if construed in one way and unconstitutional if construed in another way, the constitutional construction should be adopted. This applies to section 3 of the Schackno Act, chapter 745 of Laws of 1933. The section may be construed not as a legislative appointment of the superintendent of insurance as a successor trustee to the defendant guaranty company with all the powers relating thereto, but as a mere custodian of such property and assets of the corporation, as are the bonds and mortgages held in trust for the certificate holders until such time as a successor trustee to the defendant company may be appointed.

Judge Frankenthaler possibly had such a possible construction in mind when he said in the New York Title & Mortgage Company Case, 150 Misc. 467, 270 N. Y. S. 450, 460, as follows: "The section [4] is valid only to the extent that the authority which it confers upon the superintendent is confined (1) to mortgages owned by the guaranty companies, and (2) to other mortgages where the powers given to the superintendent coincide with those granted to the guaranty companies in the contracts between them and the certificate holders. In the latter class of cases the superintendent, as rehabilitator or liquidator of the guaranty companies, would succeed to their rights, at least until those rights were properly terminated by the certificate holders."

In the matter of Vavoudis, 141 Misc. 823, 252 N. Y. S. 779, it was held that when the superintendent of banks took possession of the bank the agency of the bank was revoked by operation of law. This case was affirmed in 233 App. Div. 672, 249 N. Y. S. 870.

See, also, In re Howell's Estate (Broderick v. Tuttle), 237 App. Div. 56, 260 N. Y. S. 510.

This suit by a nonresident plaintiff invokes this federal court of equity to have the superintendent's custody of these different bonds and mortgages belonging to plaintiff and other certificate holders "properly terminated." There seems to be no other way in which the certificate holders can properly terminate the custody or rights of the superintendent to the possession of these underlying bonds and mortgages except by unanimous application by all the certificate holders to Judge Frankenthaler's court of limited jurisdiction according to Judge Frankenthaler's view.

Inasmuch as it appears by the superintendent of insurance's own reports that under the F1 series of this certificate there are approximately 4,369 of such certificate holders and nearly as many BK certificate holders, and that they reside in various states of the Union and are not known to each other and not known to any one else except to the defendant superintendent of insurance, and the defendant company, and since the superintendent will give no information as to the identity, location, and holdings of these various certificate holders, except to those engaged in the formation of the corporation under the Schackno Act, the provisions of the statute relating to which Judge Frankenthaler says is unconstitutional in the same opinion, it follows that the refusal of this court to grant this application amounts to a substantial denial of relief to the certificate holders.

It should be said also that the total number of certificate holders of the various guarantee companies involved in this and the like suits runs into the hundreds of thousands. Even the records of the defendants if available would probably not give an accurate list due to constant changes. The fact that the changes must be recorded with the defendant company only partly removes this difficulty.

Not only would the refusal of this court to entertain this suit be a present denial of relief, but since the affairs of the defendant company are and long have been handled by the superintendent of insurance in rehabilitation and not in liquidation, and since no man knows when it will be decided that rehabilitation is impossible and liquidation is necessary, such substantial denial of relief may be indefinite.

So far as appears, conditions are not growing better.

In the meantime, the loss to the certificate holders will be most substantial. It is clear that many of them are people of small means, a substantial part of which and in some cases practically all of whose means is invested in these certificates, the dire necessity of such certificate holders is apparent, and they are the prey of unscrupulous persons seeking to obtain from them these certificates which probably have substantial value and if properly handled will probably have a value equal to the face amount thereof, and which may in their necessity be sold for an inconsequential sum.

Judge Frankenthaler pointed out in this same opinion that the corporate reorganization plan may also result in serious losses. He says with reference to the reorganization plan: "Under this far-reaching power, the rights of certificate holders could be substantially impaired if not entirely destroyed. A $500,000 mortgage could be reduced to $100,000; thereby changing a $5,000 certificate to one for $1,000. A law designed to benefit and aid certificate holders might thus be made the instrument with which to work serious harm and prejudice to them."

This brings us to the consideration of the question whether or not this is a class suit of which this court has jurisdiction.

This will be considered from the standpoint of the motion for temporary relief rather than that of jurisdiction of an action based on alleged unconstitutionality of a state statute under the Federal Constitution which latter has been referred to hereinbefore. There can be little doubt that the arrangement between the guaranty company and the mortgage certificate holders was one of trust.

The guaranty company took the underlying bonds and mortgages in its own name and deposited them with a depository as the security for the mortgage certificates of like amount issued by the guaranty company. The relations of the parties and the terms under which the guaranty company induced the certificate holders to buy the certificates are stated in essential matters above.

The certificates assigned to the certificate holders proportional co-ordinate shares in the underlying bonds and mortgages, though not parting with the legal title. This made the certificate holders the equitable owners of these underlying bonds and mortgages and of the whole thereof, for the amount of the certificates was intended to be and was equal to the face amount of these underlying securities.

True, there was an agency in the nature of a power reserved by the guaranty for its own benefit to the extent of one-half per cent. of the interest paid by the underlying mortgagors. But that did not change the essential nature of the relations of the parties which essentially made the guaranty company the trustee of the underlying securities for the certificate holders with one-half per cent. compensation to the guaranty company so long as it kept its agreement with the certificate holders.

That its right to remain as trustee terminated upon default has been well held by Judge Frankenthaler in Matter of Central Hanover Bank & Trust Co., 149 Misc. 488, 268 N. Y. S. 572; Matter of City Bank, Farmers Trust Co., 149 Misc. 498, 268 N. Y. S. 554.

No good reason appears why the right to remain as trustee should not also terminate where the guaranty company issued a series of certificates instead of a certificate or guaranteed assignment of the whole mortgage to a single holder.

It was clearly the intent of the parties that the right to act as trustee was to exist only as long as the defendant company continued to perform its guaranty. A construction that the arrangement should continue until the payment in full of the underlying bond and mortgages, without a condition that in the meantime the guaranty shall be performed as to both principal and interest, becomes unreasonable and absurd.

These certificate holders have no adequate remedy at law. They cannot be united in any suit in any court because no one knows who they are except the superintendent of insurance, and he declines to tell. And if they were known to each other and could unite and obtain possession of the mortgages, what could they do with them? Each certificate holder has its separate certificate or certificates. Probably no one has a certificate, or certificates, equal to a single underlying mortgage, but if one holder does have a certificate or certificates equal to one or more of the underlying mortgages, who has power to assign to him such underlying mortgage, or mortgages, or who has power otherwise to divide the underlying mortgages among the certificate holders? Manifestly it would require the whole number to thus agree out of court. To get the whole number to agree out of court is not reasonably to be expected.

There would remain foreclosure of the mortgages. Must 4,369 certificate holders unite in the foreclosure of each mortgage, and must they contribute pro rata or pro amount of certificate of the costs and expenses of foreclosure and to the payment of delinquent taxes, etc.? Manifestly such unity is impracticable.

They cannot make the compulsory corporation reorganization contemplated by the Schackno Act, for that has been declared unconstitutional by Judge Frankenthaler.

The interest of the certificate holders can best be served, if it is not required, by a continuance of the trust and its execution by trustees for the purpose contemplated.

■ The court of equity is the institution which has come down to us as the custodian of trusts and is endowed with the power to see that the trusts are properly executed. May v. May, 167 U. S. 310, 17 S. Ct. 824, 42 L. Ed. 179; Morss v. Allin, 181 App. Div. 79, 82, 168 N. Y. S. 166; Tonnele v. Wetmore; 195 N. Y. 436, 441, 88 N. E. 1068, 1070.

In the Tonnele Case the court said: "In the absence of a trustee, the court may and will take upon itself the execution of a trust."

■ And in the execution of its duty to see that trusts are properly executed the court of equity has power to remove a trustee and appoint another in its place. May v. May, 167 U. S. 310, 17 S. Ct. 824, 42 L. Ed. 179; Franz v. Buder (C. C. A.) 34 F.(2d) 353, 357; Gould v. Gould, 108 Misc. 42, 60, 178 N. Y. S. 38, affirmed 203 App. Div. 807, 197 N. Y. S. 515. Matter of Warren v. Burnham, 125 App. Div. 169, 109 N. Y. S. 202; Disbrow v. Disbrow, 46 App. Div. 111, 114, 61 N. Y. S. 614; Quackenboss v. Southwick, 41 N. Y. 117.

The District Courts of the United States are courts of equity jurisdiction as broad as those of the state courts. Supreme Tribe of Ben-Hur v. Cauble, 255 U. S. 356, 366, 41 S. Ct. 338, 65 L. Ed. 673.

■ It is the duty of federal courts to exercise their powers in every case to which their jurisdiction extends. Hyde v. Stone, 20 How. 170, 175, 15 L. Ed. 874; Kline v. Burke Construction Co., 260 U. S. 226, 234, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077, supra; Lappe v. Wilcox (D. C.) 14 F.(2d) 861, 864.

The complainant asks that successor trustees be appointed to execute the trust arising out of the issuance of the mortgage certificates by the guaranty company.

The identity and whereabouts of the 4,369 certificate holders of series F1 and the large number of series BK are unknown, as shown, and probably change from day to day. They therefore cannot all be joined as parties plaintiff. Such inclusion is manifestly impracticable, and if required amounts to a denial of justice.

■ Federal Equity Rule 38 (28 USCA § 723) provides for such a situation. This rule provides: "When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."

But such was the law before the adoption of Equity Rule 38 both in this country and in England. Supreme Tribe of Ben-Hur v. Cauble, 255 U. S. 355, 366, 41 S. Ct. 338, 65 L. Ed. 673.

■ The fact that many of the certificate holders may, like the defendants, be residents of the state does not destroy the jurisdiction in that case. A number of certificate holders, some resident and some nonresident, applied for intervention, and subsequently withdrew their application. Had the application been granted that would not have defeated jurisdiction. Stewart v. Dunham, 115 U. S. 61, 5 S. Ct. 1163, 29 L. Ed. 329; Supreme Tribe of Ben-Hur v. Cauble, supra, page 365 of 255 U. S., 41 S. Ct. 338, 65 L. Ed. 673.

Two other groups applied for intervention. One, which will be called the Rifkin group, subsequently withdrew the application for intervention and remains as amici curiæ; and the other, which will be called the Kleinfeld group, has been permitted to intervene. The first group above mentioned wish to join plaintiff in the application for the appointment of trustee. The latter two groups preferred the corporate reorganization plan; but this has been declared unconstitutional by Judge Frankenthaler. None of the interveners preferred a continuance of the custody and administration of the estate by the defendant superintendent of insurance. The Rifkin group had gone so far as to hold meeting in which the sentiment was for corporate reorganization. The Kleinfeld group had not progressed beyond preliminary conferences, and the amount represented in this group was somewhat uncertain. The counsel for both of the latter groups was to some extent, at least, aided, if not selected, by counsel for the defendant superintendent and the defendant company. In any event the certificate holders' representatives are relatively few compared to the whole. The largest group favored the appointment of successor trustees by this court, but withdrew to avoid any question of jurisdiction. Presumably they will return.

If it were required to have unanimous consent a suit could seldom be maintained and might be defeated for selfish reasons personal to the objector and inimical to the class as a whole.

As the case now stands, the appeal to the conscience of the court is strong.

The interest of all the certificate holders is safeguarded by the execution of the trust.

█ The taking over the execution of the trust by the court of equity runs only to the remedy and not to the rights of the party, apart from the custody of the res.

█ The state cannot by legislation change the remedy of nonresidents in the federal courts of this state. David Lupton's Sons Co. v. Automobile Club, 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699; Lappe v. Wilcox (D. C.) 14 F.(2d) 861; Morrill v. Am. Reserve Bond Co. (C. C.) 151 F. 305; Hyde v. Stone, 20 How. 170, 175, 15 L. Ed. 874.

█ The law that controls in the matter of remedy is the law of the forum, and no other. California Prune & Apricot Growers' Ass'n v. Catz American Co., 60 F.(2d) 788, 790, 85 A. L. R. 1117 (C. C. A. 9).

These considerations largely dispose of the question that, apart from the custody of the res, the Schackno Act, even if constitutional, would control in this court, for it is largely a procedure for rehabilitation and liquidation of guaranty companies and for reorganization of certificate holders' property which is no part of the property of the guaranty companies.

█ Notice to other certificate holders is not practicably possible or necessary as appears by necessary inference from Supreme Tribe of Ben-Hur v. Cauble, supra.

Under the Personal Property Law of the state notice to all certificate holders would not be necessary. (Section 20, Personal Property Law [Consol. Laws N. Y. c. 41]).

█ It does not meet the situation to say that the law of the state is a part of the contract between guaranty company and certificate holders and that the state law provides for administration of the underlying bonds and mortgages by the superintendent of insurance and that the plaintiff is bound thereby. The provisions of the insurance law under which the defendant superintendent is acting are largely procedural and remedial, rather than a law of substantial rights. Such remedial law does not bind the nonresident who invokes the federal court, and he may avail himself of the remedial procedure of the federal court, even when the contract involved, by modification, incorporates state procedural remedies. Lappe v. Wilcox (D. C.) 14 F.(2d) 861, supra. See, also, California Prune & Apricot Growers' Ass'n v. Catz, etc. (C. C. A.) 60 F.(2d) 788, supra.

No good reason appears why the law should be otherwise in a class suit. But, in any event, the Schackno Act of 1933, and doubtless some earlier amendments of the insurance law, were enacted after these guaranteed mortgage certificates, series F1 and BK, were issued and sold.

Hence the argument falls, for it is the Schackno Act which purports to put within their habilitation and liquidation powers of the superintendent of insurance, the underlying bonds and mortgages in question, and they are not the separate property of the guaranty company, but are merely held by that company in trust for the certificate holders.

Viewing the Schackno Act as affecting substantial rights, rather than remedies, it can hardly be seriously contended that the Legislature may alter pre-existing contract rights, merely because one, but not both, of the parties is the state's corporate creature.

█ It is further contended that the material facts of the bills of complaint, moving papers, and supporting affidavits are denied by the defendant and that the court therefore cannot grant the relief asked for until after trial. In so far as the answer of Silberberg, who was permitted to intervene after the return day of this motion, is concerned, denials by him through his attorney upon information and belief, or denial of any information sufficient to form a belief as to allegations admitted by parties defendant, should not be considered by the court. His intervention should be conditioned upon his not raising any issues not raised by the original parties themselves.

The denials by the parties themselves are in large measure denials of the legal effect flowing from allegations of fact which were not in truth denied. The denials of the allegations of the complaint and of statements in the supporting affidavit made upon information and belief or upon lack of knowledge or information sufficient to form a belief may be held to be outweighed in so far as they relate to matters set forth by the defendants, or any of them in documentary form, either in applications to the court under the state law or in reports either by the defendant company or the defendant superintendent of insurance, or by facts found in reported decisions of the New York state court.

█ With these things eliminated, or outweighed, the facts shown in behalf of the motion for temporary relief are sufficient to warrant the court in granting temporary re-

lief, since they sufficiently show the irreconcilable position of the superintendent of insurance in his conduct of the affairs of the defendant company, including the underlying bonds and mortgages, the payment and disposition of the interest and principal paid thereon, and attitude toward the certificate holders.

Besides the facts and conditions already mentioned, there are further pertinent matters which disclose the plight of the certificate holders.

It appears by the affidavit of one Bienfeld, and this appears not to be denied, that upon demand for her interest of $250, she was at first offered $70, and then she received $158 on account, and the balance of $96 was withdrawn to reimburse the company for payments made under its guaranty, which the superintendent sought to apply to reimburse the company for these advances and which would be held awaiting a decision of the court.

This is apparently typical of a general attitude; that the superintendent of insurance has taken funds in the possession of the defendant company in which undoubtedly are included funds rightly belonging only to certificate holders to purchase the capital stock of the New Title Insurance Company caused by him to be formed as a rehabilitation corporation is undoubted. The capital stock of the new company thus formed has been delivered to the defendant company in place of the moneys thus removed. Whether that stock will ultimately be worth its cost, or more or less, cannot now be determined. In immediate liquidation it might be almost worthless. This statement is not intended as any criticism of the superintendent of insurance, because he doubtless conceived it to be his function under the rehabilitation proceedings of the Schackno Act. That he has pressed, if not insisted upon, the release by the mortgage holders of the guarantees by the defendant company, as well as by other companies, is undoubted. Whether the certificate holders have also been induced to release the defendant company from the guaranty is a disputed fact, which cannot be determined and need not be determined at present.

That the superintendent of insurance has withheld payments of interest made on the guaranteed mortgages and retained the same in the treasury for the defendant company is also a fact. That he has done the same with interest moneys received from underlying mortgages is also probably a fact.

That the taxes have been unpaid and are accumulating interest and penalties, although there was apparently money in the treasury of the defendant to pay the same, may be taken as true, also. Continuance of such defaults will seriously jeopardize the holders of the mortgage certificates and will eventually result in the sale of some of their property for taxes and may possibly deprive them of their security.

It sufficiently appears that the defendant superintendent of insurance plans to reimburse the guaranty companies, including the defendant company, out of the assigned rents and interest received on underlying mortgages, for payments made by the companies to mortgage holders and mortgage certificate holders in advance of receipt by the companies.

He plans to make use of such rents and interest to reimburse the defendant company to the amount of about $335,000, for such advances to certificate holders, at a time when the unpaid taxes on the F1 properties amounted to more than $1,100,000 and when he had in his possession only $446,181.10 applicable to the F1 series. That the court prevented such reimbursement in Matter of Central Hanover Bank & Trust Co., 149 Misc. 488, 268 N. Y. S. 572, is not important.

To allow $1,100,000 of back taxes to remain unpaid and to increase by interest and penalties and thus impair the value of the underlying mortgages while planning to use moneys available therefor to reimburse the guaranty companies for such advances, by the very statement of the facts, clearly indicates that the superintendent conceived his duty to rehabilitate the guaranty company to be paramount over his duty to the certificate holders.

That the guaranty company may be entitled to such reimbursement after all claims of the certificate holders have been satisfied may be conceded. But that time has not yet arrived and may never arrive. In the meantime, the rights of the certificate holders are paramount.

The refusal of the superintendent to pay disbursements of foreclosure, including back taxes, if the property is bid in by the mortgagee, has a tendency, when known, to encourage default in payments on the underlying mortgage as well as in payment of taxes, and also to assign rents.

The explanation of all these acts on the part of the defendant superintendent doubtless is that he has taken the Insurance Law of the state, including the Schackno Act, as

a mandate for the rehabilitation of the guaranty companies, and that he has entered upon the task as a real service to the public, the accomplishment of which should prevail over the temporary embarrassment of the guaranteed mortgage holders and guaranteed mortgage certificate holders. That this rehabilitation is a herculean task is without question. That it will be a real public service this court is not prepared to deny, but freely to concede. This court fully recognizes the high character, ability, and fidelity of the superintendent of insurance to what he probably conceives to be his paramount public duty. The trouble is that these rehabilitation proceedings as conducted are attended with distinct detriment to these mortgage certificate holders, many of whom are represented to be people of small means and in desperate circumstances, and these proceedings are likely to continue so long that this court should protect the certificate holders by withdrawing the underlying bonds and mortgages from the custody of the superintendent and placing them in the hands of successor trustees to execute the trust.

Judge Frankenthaler well expressed the situation in which the statutes place the superintendent of insurance in the Nemerov Case, 149 Misc. 797, 268 N. Y. S. 588, 596, when he said:

"The superintendent of insurance has been forced by the statutes defining his duties to accept the position of acting for conflicting and antagonistic interests in the rehabilitation proceedings. * * *

"The embarrassing position in which the superintendent finds himself as a result of his statutory obligation to represent conflicting interests will be very largely relieved if those owning collateral in the possession of the guaranty companies taken over by the superintendent are granted the rights to which their ownership entitles them and are permitted to withdraw such collateral and deal with it as they see fit."

The court has uniformly held that trustees should not be permitted to serve conflicting interests. Perhaps nowhere is the rule more rigid than the requirement that trustees must not be in a position of divided loyalty. In Meinhard v. Salmon, 249 N. Y. 458, 464, 164 N. E. 545, 546, 62 A. L. R. 1, Cardozo, C. J., said:

"Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt v. Fischer, 243 N. Y. 439, 444, 154 N. E. 303.

"Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

In Munson v. Syracuse, G. & C. R. Co., 103 N. Y. 59, 8 N. E. 355, 358, Judge Andrews said:

"The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed. * * *

"The value of the rule of equity to which we have adverted, lies, to a great extent, in its stubbornness and inflexibility."

That the superintendent of insurance thus finds himself in a position of conflicting interest is reasonably clear and the fault is not that of the superintendent but of the statute under which he is required to operate. That this conflict of interest warrants if it does not require the appointment of successor trustees is reasonably clear.

In this view of the case it is not necessary to determine the exact status of the superintendent of insurance as a statutory trustee appointed by the Legislature under the statute in succession to the guarantee company.

Even if the Legislature intended to make him a successor trustee with full power to execute the trust, the inconsistent position in which he finds himself warrants the action of the court in appointing successor trustees.

In view of the interests involved in this and the companion cases, it is fitting that some statement be made about the functions and compensation of trustees to be appointed herein.

The trustees will be temporary and will act only until the trial of the action and the entry of final judgment. If the temporary trustees shall be made permanent trustees by the final judgment herein, their powers and duties, both as temporary and permanent trustees, will be controlled by the trust agreement between the defendant company and the certificate holders.

Their compensation will be the same one-half per cent. of the interest received from the underlying mortgage as was the compensation of the defendant company. These trustees take the place of the defendant guaranty company now in default and carry

on the trust in the same manner as the defendant guaranty company would have done had it not defaulted and been taken over by the defendant superintendent of insurance. The trustees will have the same powers and duties as the guaranty company had.

While there will be no wholesale foreclosures, and encouragement by way of extension or otherwise will be, and even financial aid may be, given to the property owners in proper cases to enable them to pay the taxes, insurance, and interest in order to rehabilitate the security of the underlying mortgages, there will be no hesitation to foreclose, once it is evident that no other course will safeguard the certificate holders. The certificate holders will not be called upon to advance the costs of foreclosure.

The certificate holders are constantly in a position to invoke the court's supervisory powers over trustees. In this respect the certificate holders possess much greater powers than during the incumbency of the defendant company. With the trustees the certificate holders possess a supervision over the management of their trust estate, which is lacking under any Schackno plan of corporate reorganization. By the latter plan the certificate holders will probably give up their right as a mortgagee to become stockholders and holders of second mortgage certificates.

While the Schackno Act may yet come before this court upon the question of its constitutionality and this court should not in this preliminary motion express its opinion thereon, it may not be amiss to say that under the certificate holder corporate organization provisions of the Schackno Act, the present certificate holders may present their grievances to the corporate directors and officers, but may not readily present them to any court.

Under the successor trustees to be appointed by this court, any certificate holder may make himself a party to this proceeding and present any proper matter to the attention of the court.

The condition of suffering and distress which is claimed to prevail to-day in the case of many certificate holders requires that the trustees should regard their work as a public trust.

An order may be entered for the appointment of temporary trustees of the underlying mortgages in series F1 and BK, and enjoining interference with these mortgages, and for an accounting by the superintendent of insurance and the defendant company of the moneys received from the underlying mortgages, and of the rents from foreclosed properties.

The order should provide that the defendant Bank of Manhattan Company may remain as depository until the trial or further order of the court upon the same terms as heretofore.

The order may also provide that application may be made by the superintendent of insurance to postpone the accounting until the trial of this action.

The order may be settled on three days' notice.